Docket No. 109485.

**IN THE**
**SUPREME COURT**
**OF**
**THE STATE OF ILLINOIS**

WILLIAM CARR, Indiv. and on Behalf of All Others Similarly Situated, Appellee, v. GATEWAY, INC., Appellant.

*Opinion filed February 3, 2011.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

In 2001, plaintiff, William Carr, and his wife purchased a computer from defendant, Gateway, Inc. Carr subsequently filed suit alleging misrepresentation by Gateway as to the speed of the computer's processor. Gateway sought to dismiss the suit and compel arbitration in accordance with the terms of the sales contract. The circuit court of Madison County denied the motion, holding, *inter alia*, that there was no valid arbitration agreement between the parties. Gateway appealed under Rule 307(a)(1) (Ill. S. Ct. R. 307(a)(1) (eff. Mar. 20, 2009)). While the case was on appeal, the National Arbitration Forum (NAF), the arbitral forum designated in the arbitration agreement, stopped accepting consumer arbitrations. Thereafter, the appellate court affirmed the circuit court on the basis that the arbitration

agreement failed due to the unavailability of the arbitral forum. 395 Ill. App. 3d 1079. We allowed Gateway's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). The present appeal concerns whether section 5 of the Federal Arbitration Act (Arbitration Act or Act) (9 U.S.C. §5 (2006)) applies to permit the circuit court to appoint a substitute arbitrator due to the unavailability of the parties' designated arbitral forum.

## BACKGROUND

Plaintiff Carr and others filed a class action complaint in June 2002, against defendants Intel Corporation, Gateway, Inc., and other computer manufacturers. The complaint alleged that defendants marketed Pentium 4 processors and computers in a misleading manner by claiming that the Pentium 4 processor was faster than its predecessor, the Pentium III. Carr alleged that, in fact, the Pentium 4 was slower than the Pentium III and Athlon processors from AMD (Advanced Micro Devices, Inc.).

Carr's allegations were contained in counts IV, V, and VI of the class action complaint. In 2003, the circuit court severed those counts and Carr's allegations proceeded separately. In the other action, styled *Barbara's Sales, Inc. v. Intel Corp.*, the circuit court certified a class. The defendants in that action appealed and the case eventually came before this court, where we held that the class action could not proceed because the alleged representations made by the defendants in that case were not actionable under Illinois law. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 76 (2007).

With respect to the instant case, Carr alleged causes of action under California law and under Illinois's Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2000)). The allegations in Carr's complaint were identical to those contained in the original class action complaint. Gateway filed a motion to dismiss or, in the alternative, to compel arbitration, based on an arbitration clause in a "Limited Warranty Terms and Conditions Agreement" that was included in the materials sent with the computer when it arrived at Carr's home. Gateway argued that Carr agreed to arbitrate all disputes.

In November 2007, the circuit court held an evidentiary hearing

on Gateway's motion. Following the hearing, the circuit court denied the motion, ruling that the agreement containing the arbitration clause was not part of the sales contract entered into by the parties. The court also found that, even if the arbitration clause were part of the sales agreement, it could not be enforced because it was unconscionable due to the following: (1) the clause was nonnegotiable; (2) it was part of a preprinted form and was not read by Carr until several days after the computer was purchased; (3) the terms of the arbitration clause were one-sided; (4) Carr could be saddled with large costs in pursuing his claim through the designated arbitral forum; (5) Carr would be prohibited from pursuing his claim as a class action; and (6) Carr would be prohibited from pursuing a claim for punitive damages.

Gateway timely appealed. When it became known that the NAF had stopped accepting consumer arbitrations, the appellate court ordered supplemental briefing regarding the effect of this development on the case. In its decision, the court noted the circuit court had ruled that the agreement to arbitrate was not a part of the contract for the purchase of the computer. The appellate court assumed, for purposes of the appeal, that there was a valid agreement to arbitrate. The court noted a split among courts as to whether section 5 of the Arbitration Act applies in such cases. The court then held that the specific designation of the NAF as the exclusive arbitration forum was an integral part of the arbitration clause, noting that the NAF has a "very specific set of rules and procedures that has implications for every aspect of the arbitration process." 395 Ill. App. 3d at 1085. As further support for its decision, the appellate court also pointed to a clause in the agreement that allowed the arbitrator to impose monetary penalties on a party for bringing a dispute in any forum other than the NAF. Thus, the court found that section 5 of the Act could not be used to reform the arbitration provision. *Id.* at 1086.

## ANALYSIS

### I

This appeal requires us to interpret the parties' arbitration agreement. An agreement to arbitrate is a matter of contract. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). The interpretation of a contract

involves a question of law, which we review *de novo. Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007).

II

The arbitration provision at issue states in pertinent part as follows:

> "You agree that any Dispute between You and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below. The arbitration will be conducted before a single arbitrator, and will be limited solely to the Dispute between You and Gateway. \*\*\* Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision. **You understand that You would have had a right to litigate disputes through a court, and that You have expressly and knowingly waived that right and agreed to resolve any Disputes through binding arbitration.** This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*" (Emphasis in original.)

Section 2 of the Arbitration Act (9 U.S.C. §2 (2006)) provides:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

In *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 384 (2004), this court noted that Congress enacted the Arbitration Act to reverse

-4-

long-standing judicial hostility to arbitration agreements and to place arbitration agreements on the same footing as other contracts. The Arbitration Act reflects a " 'liberal federal policy favoring arbitration agreements.' " *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). This court has recognized that, in construing federal laws, decisions of the federal courts are binding upon this court, to the end that such laws may be given uniform application. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996).

Section 4 of the Arbitration Act (9 U.S.C. §4 (2006)) permits a party in a civil action to petition the court for an order directing that arbitration proceed in the manner provided in the parties' arbitration agreement. Section 5 of the Arbitration Act is the provision with which we are concerned here. That section provides:

> "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, *or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy,* then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." (Emphasis added.) 9 U.S.C. §5 (2006).

In this case, NAF, the chosen arbitral forum, no longer accepts consumer arbitrations. No provision is made in the arbitration agreement for the naming of a substitute arbitral service or arbitrator. Thus, the question before us is whether section 5 of the Arbitration Act may be applied to permit the circuit court to name a replacement for NAF.

Some courts have used section 5 to uphold arbitration clauses where the chosen arbitral forum was unavailable. For example, in *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359 (N.D. Ill. 1990), the arbitration clause provided that any

arbitration would be governed by regulations prescribed by the Chicago Board of Trade (CBOT). CBOT declined jurisdiction and dismissed the plaintiff's demand for arbitration. Merrill Lynch filed a motion to compel arbitration with a neutral arbitrator. Noting that the case implicated the strong federal policy favoring arbitration, the district court stated that the decision between substituting a new provision for the failed one and refusing to enforce the agreement turns on the intent of the parties at the time the agreement was executed. To determine this intent, a court looks to the essence of the arbitration agreement, *i.e.*, whether the essential term is the agreement to arbitrate or whether the failed term is not merely an ancillary logistical concern, but instead is as important a consideration as the agreement to arbitrate itself. The district court found the provision at issue there not to be integral to the agreement to arbitrate. CBOT was not named as arbitrator or as the arbitration coordinator. The intent of the provision appeared to be that arbitrations would proceed under CBOT regulations as a general matter; thus, a neutral arbitrator could proceed under those regulations. *Id.* at 1365.

In *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000), the plaintiff, an employee of the defendant, filed suit after he was terminated from his position. The plaintiff had signed an employment agreement that contained an arbitration clause, which stated that the parties agreed that any dispute or claim would be resolved by binding arbitration "under the Code of Procedure of the National Arbitration Forum." *Id.* at 1220. The plaintiff filed an action in district court, and the defendant moved to compel arbitration. The district court granted the motion. On appeal, the plaintiff argued, *inter alia*, that the arbitration clause was void because the chosen forum had dissolved. The appeals court rejected this argument. The court noted that where the chosen forum is unavailable, section 5 of the Arbitration Act permits a substitute arbitrator to be named. This is true, however, only if the choice of the arbitral forum is not an integral part of the agreement to arbitrate, but instead is an " 'ancillary logistical concern.' " The *Brown* court found no evidence that the choice of the NAF was an integral part of the agreement to arbitrate. *Id.* at 1222.

The parties' chosen arbitrator declined jurisdiction in *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006). The arbitration

agreement stated that any arbitration would be determined "pursuant to the rules then in effect of the National Association of Securities Dealers, Inc., [NASD] as the undersigned you may elect." *Id.* at 1059. The appeals court found that this provision was not integral to the agreement to arbitrate. In fact, noted the court, there was not even an express agreement that the NASD would be the arbitrator, but only that any arbitration would utilize its rules. *Id.* at 1060.

In contrast, Carr cites cases that have refused to utilize section 5 of the Arbitration Act to name a substitute arbitrator. He principally relies, as did the appellate court, on *Grant v. Magnolia Manor-Greenwood, Inc.*, 678 S.E.2d 435 (S.C. 2009), a case from the South Carolina Supreme Court. There, a nursing home resident fell and injured herself, resulting in her subsequent death. Her husband filed a wrongful-death action. The nursing home sought to compel arbitration in accordance with an arbitration agreement entered into by the parties. The agreement named the arbitral service that would administer the arbitration. That service subsequently became unavailable as to preinjury arbitration agreements. The circuit court denied the nursing home's motion to compel arbitration. The supreme court noted a dispute in the case law as to whether section 5 of the Arbitration Act applies in cases where the parties have specified an arbitral forum and that forum becomes unavailable. The court also noted that courts applying section 5 have identified an exception to application where the choice of arbitral forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern. Assuming that section 5 applied in the case before it, the South Carolina court found that the specific designation of an arbitral forum in the arbitration agreement was an integral part of the agreement. The court noted that by choosing the arbitral forum, the parties waived a set of rights regarding procedural rules and the right to choose an arbitrator. The court found this waiver to reflect the parties' intent to arbitrate exclusively before their chosen arbitral forum. Thus, section 5 of the Arbitration Act did not apply and the arbitration agreement was unenforceable. *Id.* at 438-39.

The appellate court here found that *Grant* supported its conclusion that the designation of the NAF in the agreement to arbitrate was integral to the agreement. Specifically, citing *Grant*, the appellate court noted that the NAF has a "very specific set of rules

and procedures that has implications for every aspect of the arbitration process." 395 Ill. App. 3d at 1085.

Gateway argues that the appellate court erroneously determined that there is a split in the federal case law as to the proper application of section 5 of the Arbitration Act. It argues that the South Carolina court in *Grant* relied on the flawed analysis of *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). In that case, certain shareholders sued the defendants, who were officers of Salomon, Inc. The district court granted the defendants' motion to compel arbitration. The arbitration agreements at issue stated that any controversy would be submitted for arbitration "in accordance with" the constitution and rules then obtaining of the New York Stock Exchange (NYSE). The NYSE declined to arbitrate the dispute. The district court denied the defendants' request to appoint a substitute arbitrator. The defendants appealed. The appeals court rejected the defendants' argument that arbitration need not take place before the NYSE as long as the NYSE's rules govern in any arbitration. Citing cases in which the court had considered similar arbitration language, the court concluded that a proper reading of the parties' agreement showed that they had designated the NYSE as the exclusive arbitral forum. *Id.* at 559.

The court also rejected the defendants' argument that there had been a "lapse" in the naming of an arbitrator such that section 5 would permit the appointment of a substitute arbitrator. The court stated its belief that the "lapse" language of section 5 referred to a mechanical breakdown in the arbitrator selection process such as a lapse in time in the naming of an arbitrator or in the filling of a vacancy on a panel of arbitrators. Because the district judge had referred the matter to the NYSE for arbitration, there was no lapse or breakdown in selecting the arbitrator. The court noted other cases that had applied section 5 to appoint new arbitrators when the named arbitrator could not or would not proceed. However, the court noted, none of those cases could be read to permit a court to use section 5 of the Arbitration Act to circumvent the parties' designation of an exclusive arbitral forum. *Id.* at 560-61.

Gateway argues that *Salomon* relied on inapposite cases for its holding and it notes that the *Reddam* case pointed this out. However, the court in *Reddam* faulted *Salomon* for concluding that where a

forum selection clause " 'is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail.' " *Reddam*, 457 F.3d at 1060 (quoting *Salomon*, 68 F.3d at 561). The language the *Reddam* court quotes from *Salomon*, however, actually comes from *Zechman*, a case on which Gateway relies. See *Zechman*, 742 F. Supp. at 1364.

Regardless of any perceived conflict among courts on this issue, we agree with those federal courts that have held section 5 of the Act may be applied to name a substitute arbitrator where the parties' designated arbitral forum fails, unless the designation of the arbitral forum is integral to the parties' agreement to arbitrate. We are mindful that the Act promotes a liberal federal policy favoring arbitration as an alternate dispute resolution mechanism. *Cone*, 460 U.S. at 24. To that end, section 5 permits the naming of a substitute arbitrator where, "for any *** reason," there has been a lapse, *inter alia*, in the naming of an arbitrator. 9 U.S.C. §5 (2006). Where the designation of an arbitral forum is only an ancillary, logistical concern and the primary consideration is the intent to arbitrate disputes, allowing a court to appoint a substitute arbitrator fulfills the parties' agreement to arbitrate. Accordingly, we now turn to the arbitration agreement in this case to determine whether section 5 of the Act applies here.

Gateway argues the appellate court should have followed *Brown* and *Reddam*. Carr, on the other hand, cites cases in which courts held that because parties designated a particular forum and a set of rules to govern arbitrations, the designated forum was integral to the agreement. Carr cites *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds*, 14 So. 3d 695 (Miss. 2009), a Mississippi Supreme Court case, which involved a nursing home resident and an admissions agreement that contained an arbitration clause. The chosen forum became unavailable due to a change in its policies toward preinjury arbitration agreements. The supreme court refused to allow for the appointment of a substitute arbitrator. However, prior to this holding, the court had ruled that the arbitration clause was unconscionable, thereby rendering the entire admissions agreement unenforceable. *Id.* at 703. Thus, it was not necessary for the court to consider whether a substitute arbitrator could be appointed. In addition, we note that the court did not consider the impact of section

5 of the Arbitration Act on the question of the appointment of a substitute arbitrator.

Carr also cites *Carideo v. Dell, Inc.*, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009), where the parties had designated the NAF as the arbitral forum with much of the same language at issue here. After the NAF stopped administering consumer arbitrations, the district court was faced with the question of whether a substitute arbitrator could be appointed. The court held that the designation of the NAF was integral to the arbitration agreement, relying in part on the appellate court case that we are reviewing in the instant appeal. The court interpreted language in the arbitration clause stating that disputes shall be resolved "exclusively and finally" by binding arbitration administered by the NAF under its rules then in effect. The court rejected Dell's argument that "exclusively" modified "binding arbitration," holding instead that the word referred to arbitration by the NAF. As to the NAF's rules, the court questioned whether there were any NAF rules for consumer arbitrations that remain in effect. *Id.* at 4-5.

In contrast, we note that the district court in *Adler v. Dell Inc.*, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009), reached a contrary conclusion in construing an identical arbitration clause. The court found the phrase "exclusively and finally by binding arbitration administered by the [NAF]" to be ambiguous as to whether the parties intended "to embrace arbitration as their exclusive and final recourse for disputes while identifying NAF as a secondary matter to administer the process, or whether they intended NAF arbitration only to be their exclusive and final recourse for disputes." The court noted that both interpretations had merit, but there was nothing in the language of the arbitration clause to indicate which was the intended interpretation. *Id.* at 2. The court pointed to two aspects of the agreement that tended to support the interpretation that the designation of the NAF was secondary to the intent to arbitrate. First, the agreement required that NAF rules be used, which would appear to be surplusage unless another arbitral forum were to be used. The court noted that the plaintiff had given no reason why NAF rules could not be applied by a substitute arbitrator. Second, the court noted, the agreement specifically limited the arbitration process to the customer and Dell, which adds emphasis to the process agreed upon, as opposed to the

designated forum. However, the court noted that the agreement lacked any provision for an alternative to the NAF in the event the NAF was unable or unwilling to administer the arbitration. This could support either interpretation. Ultimately, the court determined that the language of the agreement fell short of satisfying the exception to application of section 5 of the Arbitration Act that an arbitration agreement will fail only if it is clear that the designation of the arbitral forum is integral to the agreement. Thus, the arbitration agreement did not fail due to the unavailability of the parties' chosen arbitral forum. *Id.* at 3-4.

Gateway argues that the parties anticipated in their agreement that the NAF might become unavailable when they agreed that their disputes would be resolved by arbitration administered by the NAF and conducted under its rules, "except as otherwise provided below." Gateway then points to a subsequent sentence in the agreement that states the agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Arbitration Act. Gateway concludes that section 5 of the Act "is therefore an agreed exception to any requirement that the arbitration be administered by the NAF where (as is true here), the NAF is not available." Carr disagrees with Gateway's interpretation, noting that the sentence immediately following the "except as otherwise provided below" language states that the arbitration will be limited to the dispute between the purchaser and Gateway. Carr believes the "except as otherwise provided below" language was likely an attempt by Gateway to guard against the possibility that the NAF may repeal its prohibition against class arbitrations. We conclude that, since it is not clear what this phrase refers to, its presence in the agreement is neutral on the issue of whether section 5 applies here.

The parties disagree as to the significance of the requirement in the arbitration clause that the arbitration proceed under the NAF Code of Procedure. Gateway argues that by stating that arbitrations would be conducted under NAF rules, the parties anticipated that arbitration would go forward even if the NAF were unavailable. According to Gateway, this language would be mere surplusage if the NAF were the only acceptable forum. Gateway also argues that the appellate court erred in relying on *Grant*, arguing that NAF rules do not affect the substantive outcome of an arbitration, citing Rule 5 of the NAF Code

-11-

of Procedure, which states that "[a]n arbitrator follows the applicable substantive law and may grant any remedy or relief provided by law or equity, including monetary and injunctive relief." http://www.adrforum.com/users/naf/resources/CodeofProcedure2008-print2.pdf. Gateway further argues that the appellate court seemed to believe that the rules of any selected forum would have such an effect. Carr claims that NAF rules do have substantive implications for the outcome of his claim. He asserts that the NAF fee schedule, as set by its rules, would require him to pay more in filing costs than he could expect to receive in any recovery from Gateway.

We agree with Gateway that the mere fact parties name an arbitral service to handle arbitrations and specify rules to be applied does not, standing alone, make that designation integral to the agreement. If this were so, section 5 of the Arbitration Act would not apply in any case where the parties specify an arbitrator that later becomes unwilling or unable to handle the arbitration. Such a construction would encourage parties to be as vague as possible in drafting their arbitration agreements to guard against a court refusing to apply section 5 of the Act in the event the chosen arbitral forum became unavailable. Section 5 anticipates that a named arbitral forum may become unavailable and it provides a mechanism to appoint a substitute. As courts have noted, it is possible in some cases for a substitute arbitrator to use the rules specified in an arbitration agreement and where that is so, the mere designation of particular rules to govern an arbitration will not prevent the naming of a substitute arbitrator under section 5. See, *e.g.*, *Reddam*, 457 F.3d at 1060; *Brown*, 211 F.3d at 1222; *Zechman*, 742 F. Supp. at 1365.

In this case, it is unclear whether a substitute arbitrator could use NAF rules. We first note that Rule 1(C) of the Code provides that arbitrations are to be conducted in accordance with the applicable Code of Procedure in effect at the time a claim is filed, unless the parties agree otherwise. http://www.adrforum.com/users/naf/resources/CodeofProcedure2008-print2.pdf. Because a claim has not yet been filed in this case, the Code that would govern any arbitration is the current Code, which became effective on August 1, 2008. Rule 1(A) of that Code states as follows:

> "Parties who contract for or agree to arbitration provided by the Forum or this Code of Procedure agree that this Code

governs their arbitration proceedings, unless the Parties agree to other procedures. This Code shall be deemed incorporated by reference in every Arbitration Agreement, which refers to the National Arbitration Forum, the International Arbitration Forum, the Arbitration Forum, adrforum.com, Forum or this Code of Procedure, unless the parties agree otherwise. This Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum." http://www.adrforum.com/users/naf/resources/CodeofProcedure2008-print2.pdf.

Neither party has indicated whether an arbitrator could be appointed who would be allowed to conduct an arbitration under NAF rules. Nor is it known whether NAF rules could be used in a consumer arbitration, given the fact that NAF no longer accepts such arbitrations. Thus, any finding by this court concerning the use of NAF rules by a substitute arbitrator would be based on speculation. The fact that the NAF restricts the use of its rules to only those entities and individuals providing arbitral services by agreement with the NAF militates in favor of a finding that the designation of the NAF and its rules was integral to the parties' agreement to arbitrate.

There is one additional matter to consider. Carr argues that the following clause in the arbitration agreement supports a finding that designation of the NAF as the arbitral forum is integral to the agreement to arbitrate:

> "Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision."

Gateway disagrees with Carr's interpretation of this provision, arguing that a more sensible construction is that the parties did not intend this provision to apply unless the NAF was available. Gateway states, "[t]his provision simply empowers the arbitrator, whoever that might be, to award reasonable costs incurred to enforce compliance with the Agreement if anybody brings a dispute outside the NAF. Obviously, since the NAF is no longer available, it would be absurd for either party to ask a court-named arbitrator to sanction the other

-13-

party under this provision for bringing a dispute to him for resolution. Therefore, this provision is entirely consistent with the parties' intent that the designation of the NAF was a secondary concern, while the agreement to arbitrate was paramount."

We reject Gateway's interpretation of this provision. The plain language of the provision penalizes any party for bringing a dispute in any forum other than the NAF. It is self-evident that the provision was intended to apply if the NAF was available to administer arbitrations. That is the whole point of the clause. Gateway, which drafted the agreement and presented the nonnegotiable terms to Carr when he purchased his computer, sought, by this clause, to ensure that only the NAF would administer any arbitrations that arose under the agreement. Significantly, the penalty provision does not merely allow monetary penalties to be imposed for bringing a dispute in a court of law. Such a provision might tend to indicate that the agreement to arbitrate was paramount and that the designation of the NAF was merely a secondary, logistical consideration. Instead, the provision allows for the imposition of monetary penalties even if a party files a claim with an arbitral service other than NAF.

To find that the designation of the NAF as the arbitral forum is integral to the agreement to arbitrate, we must be able to conclude that the choice of the NAF was so central to the agreement to arbitrate that the unavailability of the NAF brought the agreement to an end. See *Reddam*, 457 F.3d at 1061. A reading of the penalty provision clearly indicates that the designation of the NAF as the arbitral forum is integral to the agreement. Therefore, we conclude that the designation of the NAF as the arbitral forum was integral to the agreement to arbitrate and, thus, section 5 of the Arbitration Act may not be utilized to select a substitute arbitrator.

CONCLUSION

For the reasons stated, we hold that the designation of the NAF as the arbitral forum was integral to the parties' agreement to arbitrate. We further hold that, in light of this fact, section 5 of the Arbitration Act does not apply to permit the appointment of a substitute arbitrator. Accordingly, the agreement to arbitrate fails.

For the reasons stated, the judgment of the appellate court is affirmed.

Affirmed.