NOTICE
Decision filed 11/28/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 150360

NO. 5-15-0360

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ROSEMARY KEEFE, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04-L-502 |
| ALLIED HOME MORTGAGE CORPORATION and ALLIED HOME MORTGAGE CAPITAL CORPORATION, | ) ) ) ) | Honorable |
| Defendants-Appellees. | ) ) | Vincent J. Lopinot, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justice Moore concurred in the judgment and opinion.
Presiding Justice Schwarm dissented, with opinion.

**OPINION**

¶ 1 The plaintiff, Rosemary Keefe, appeals from an order granting a motion to compel arbitration filed by defendants, Allied Home Mortgage Corporation and Allied Home Mortgage Capital Corporation. The plaintiff contends that the circuit court erred in finding that the parties' arbitration agreement was enforceable where the designated arbitrator was no longer able to conduct consumer arbitrations and where there was no showing that the

1

designated procedures governing the arbitration agreement authorized the appointment of a substitute arbitrator. For reasons that follow, we reverse and remand.

¶ 2                                BACKGROUND

¶ 3     In 1999, the plaintiff, Rosemary Keefe, contacted the defendants for assistance with the refinancing of a loan on her property in Berwyn, Illinois. The defendants were in the business of brokering mortgages and providing mortgage related services in several states in the United States, including Illinois. On May 18, 1999, the plaintiff signed several refinancing documents, which included an arbitration rider. Two months later, the parties closed on the loan.

¶ 4     On September 2, 2004, the plaintiff filed a class action complaint against the defendants. The plaintiff alleged that the defendants engaged third parties to provide certain loan-related services, such as credit reports and appraisals, and paid the fees charged for those services. The plaintiff further alleged after payment of the third-party fees, the defendants then charged the plaintiff, and similarly situated borrowers, sums in excess of those fees ("upcharges"), and then concealed the "upcharges" by failing to disclose the actual fees that the defendants had paid to the third parties. The plaintiff's complaint included counts asserting breach of fiduciary duty, breach of the covenant of good faith and fair dealing, unjust enrichment, and consumer fraud.

¶ 5     On December 15, 2004, the defendants filed a motion to compel arbitration and stay judicial proceedings based upon the arbitration rider. The plaintiff filed a memorandum in opposition. The plaintiff asserted that the arbitration rider was unenforceable because it was cost-prohibitive, unsupported by consideration, against public policy, and procedurally and

substantively unconscionable. Over the next several months, the parties submitted additional oral and written arguments to the trial court. On July 18, 2007, the trial court denied the defendants' motion to compel arbitration. The court found that the arbitration rider was illusory and procedurally and substantively unconscionable. The defendants appealed. In an opinion issued on July 10, 2009, this court found that the arbitration rider was supported by adequate consideration but that the provision prohibiting class arbitrations was substantively unconscionable. *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 912 N.E.2d 310 (2009). This court also determined that the provision prohibiting class arbitrations was severable from the remainder of the arbitration rider, leaving the agreement to arbitrate in place. *Keefe*, 393 Ill. App. 3d at 236, 912 N.E.2d at 320. The case was remanded to the circuit court with directions to sever the provision prohibiting class actions and to enforce the remainder of the arbitration clause.

¶ 6 Within days after the opinion was issued, the parties' chosen arbitrator, the National Arbitration Forum (NAF), became embroiled in a controversy. On July 14, 2009, the Minnesota Attorney General filed a complaint against the NAF, and alleged, among other things, that the NAF had systematically used arbitrators with pro-business biases, and thereby engaged in consumer fraud and deceptive trade practices. On July 28, 2009, the NAF entered into a consent decree with the Minnesota Attorney General, and agreed to stop accepting all consumer cases for arbitration. See *Minnesota v. National Arbitration Forum, Inc.*, No. 27-CV-09-18550 (Minn. 4th Dist. Ct. July 17, 2009) (consent decree); *In re National Arbitration Forum Trade Practices Litigation*, 704 F. Supp. 2d 832, 835 (D. Minn. 2010).

¶ 7    On September 23, 2009, the plaintiff filed a motion in the circuit court, and argued that the arbitration rider was unenforceable because the NAF was no longer able to arbitrate this dispute. On October 27, 2009, the defendants filed a memorandum in opposition. The defendants argued that the unavailability of the NAF did not render the arbitration rider unenforceable because the NAF was not designated as the exclusive arbitral forum and because the circuit court was authorized to appoint a substitute arbitrator under section 5 of the Federal Arbitration Act (FAA) (9 U.S.C. § 5 (Supp. III 2010)). On October 29, 2009, the plaintiff filed a reply and argued that the arbitration rider effectively designated the NAF as the exclusive arbitral forum and that no other provision in the rider authorized the selection or use of a substitute arbitrator. On January 7, 2011, the defendants filed a second motion to compel arbitration. On October 14, 2014, the circuit court granted the defendants' motion to compel arbitration. This appeal followed.

¶ 8                                    ANALYSIS

¶ 9    Agreements to arbitrate are favored as a matter of policy in Illinois and federally. *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46, 52, 943 N.E.2d 166, 172 (2011). Whenever possible, Illinois courts will construe arbitration agreements to uphold their validity. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13, 761 N.E.2d 724, 731 (2001). This pro-arbitration policy, however, is not intended to render arbitration agreements more enforceable than other contracts, and it does not operate in disregard of the intent of the contracting parties. *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 55, 976 N.E.2d 344; *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 510, 812 N.E.2d 534, 537 (2004). Rather, arbitration agreements are to be enforced according to their terms, including those specifying

4

the arbitral forum and the rules under which the arbitration will be conducted.  9 U.S.C. § 4 (Supp. III 2010); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. ___, ___, 133 S. Ct. 2304, 2309 (2013).

¶ 10    Arbitration is consensual, and arbitration agreements, as creatures of contract, are construed under ordinary principles of contract law.  *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 20, 944 N.E.2d 327, 329 (2011).  Under ordinary contract principles, the primary objective is to give effect to the intent of the parties.  *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (2011).  A contract must be construed as a whole, viewing each provision in light of the other provisions, rather than in isolation.  *Thompson*, 241 Ill. 2d at 441, 948 N.E.2d at 47.  If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning.  *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004).  If the terms of the contract are reasonably susceptible of more than one meaning, they are ambiguous and will be strictly construed against the drafter.  *Central Illinois Light Co.*, 213 Ill. 2d at 153, 821 N.E.2d at 213.  An arbitration agreement will not be extended by construction or implication.  *QuickClick Loans*, 407 Ill. App. 3d at 52, 943 N.E.2d at 172.  In addition, an arbitration agreement may be invalidated under state law contract defenses, such as fraud, duress, and impossibility.  *Carter*, 2012 IL 113204, ¶ 18, 976 N.E.2d 344.

¶ 11    In this case, we are asked to determine whether the parties' agreement to arbitrate is enforceable.  The question of enforceability arises now because the NAF, as the designated arbitral forum, is no longer able to conduct arbitrations involving consumer loans.  The NAF's unavailability raises two fundamental, multi-layered issues.  The first is whether the

designation of the NAF as the arbitral forum was integral to the parties' agreement to arbitrate, and if not, whether any other provision in the arbitration rider authorizes the appointment of a substitute arbitrator. The second is whether the term stating that the arbitration rider shall be governed by the Code of Procedure of the National Arbitration Forum (NAF Code) in effect at the date of the agreement is integral to the agreement to arbitrate. If the NAF Code is integral to the agreement to arbitrate, then there are questions about whether the applicable version of the NAF Code is available for use and whether it is permissible for an arbitrator, other than the NAF or its affiliates, to conduct an arbitration under the NAF Code. The interpretation of this arbitration rider presents questions of law that are reviewed *de novo*. *Carr*, 241 Ill. 2d at 20, 944 N.E.2d at 329.

¶ 12                                The Arbitration Rider

¶ 13    The arbitration rider at issue states in pertinent part:

> "All disputes, claims or controversies arising from or related to the loan evidenced by the Note, including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under 'Exclusions from Arbitration' below. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-4) and the Code of Procedure of the National Arbitration Forum as in effect at the date of this agreement. Copies of rules and forms can be obtained and any claims can be filed at any National Arbitration Forum office, *www.arb-forum.com*, or at P.O. Box 50191, Minneapolis, MN 55405."

¶ 14    This provision, drafted by the defendants and agreed to by both parties, plainly states that all claims and disputes arising from the loan "shall" be resolved by binding arbitration and that the arbitration agreement "shall" be governed by sections 1 through 4 of the FAA and the NAF Code in effect on the date of the agreement. The provision further states that copies of the rules and forms can be obtained and claims can be filed at any NAF office,

6

online, or by mail. Thus, the arbitration rider contains three basic agreements. First, the parties agreed to arbitrate their disputes. Second, the parties agreed that the arbitration would be governed under sections 1 through 4 of the FAA and the version of the NAF Code that was in effect on May 18, 1999, the date that the arbitration rider was executed. The third agreement, albeit implicit, is that the parties intended to arbitrate their disputes before the NAF.

¶ 15    Although the arbitration rider does not expressly designate the NAF as the exclusive arbitral forum, when the terms of the rider are considered together, the intent of the parties is clear. The arbitration rider specifically mandates that the parties' arbitration agreement "shall" be governed by the 1999 NAF Code. The arbitration rider also directs the parties to obtain copies of the rules and claim forms from any NAF office, or from its website, and to file the claim forms at any NAF office, online, or through its post office box. The inclusion of these directions supports a finding that the parties intended to arbitrate before the NAF. Indeed, these directions would be meaningless in the absence of the NAF's designation as the arbitral forum. When the arbitration rider is considered as a whole and the term mandating the use of the 1999 NAF Code is read in conjunction with the provision directing the parties on how to obtain the rules and claim forms and where to file the claim forms, the reasonable and natural inference is that the parties intended that their disputes would be arbitrated exclusively before the NAF, and governed by the 1999 NAF Code.

¶ 16                    Section 5 of the FAA & Enforceability of the Arbitration Rider

¶ 17    In this case, the NAF is no longer available to arbitrate this dispute. The parties disagree on the impact of the NAF's absence. The plaintiff contends that the designation of

7

the NAF is an integral part of the agreement, and that the NAF's unavailability renders the arbitration rider unenforceable. The defendants contend that the NAF's unavailability does not doom the arbitration rider because the circuit court can appoint a substitute arbitrator under section 5 of the FAA (9 U.S.C. § 5 (Supp. III 2010)).

¶ 18    The FAA provides a comprehensive procedure for the arbitration of disputes between the parties. 9 U.S.C. § 1 *et seq.* (Supp. III 2010). Generally, sections 1 through 4 of the FAA address the applicability of the FAA to the parties' disputes, as well as the ability of one party to compel arbitration where another party has neglected or refused to comply with an arbitration agreement. 9 U.S.C. §§ 1-4 (Supp. III 2010). Section 4 permits a party to petition the court for an order directing that arbitration proceed in the manner provided in the arbitration agreement. 9 U.S.C. § 4 (Supp. III 2010). The remaining sections, including section 5, provide procedural rules governing arbitration proceedings. 9 U.S.C. §§ 5-16 (Supp. III 2010).

¶ 19    Section 5 of the FAA provides a mechanism for appointing a substitute arbitrator, and states as follows:

> "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." 9 U.S.C. § 5 (Supp. III 2010).

8

¶ 20    Generally, section 5 anticipates that a designated arbitrator may become unavailable, and provides a procedure to appoint a substitute arbitrator.  See 9 U.S.C. § 5 (Supp. III 2010); *Carr*, 241 Ill. 2d at 30, 944 N.E.2d at 335.  But the procedure provided in section 5 may not be employed to circumvent the parties' designation of an exclusive arbitral forum.  Accordingly, where the designation of an arbitral forum is integral to the agreement to arbitrate and the arbitral forum becomes unavailable to arbitrate the dispute, section 5 cannot be used to appoint a substitute arbitral forum and thereby salvage the arbitration agreement. *Carr*, 241 Ill. 2d at 26, 944 N.E.2d at 333.  In contrast, where the designation of an arbitral forum is "only an ancillary, logistical concern and the primary consideration is the intent to arbitrate disputes, allowing a court to appoint a substitute arbitrator fulfills the parties' agreement to arbitrate."  *Carr*, 241 Ill. 2d at 27, 944 N.E.2d at 333.

¶ 21    In determining whether the designated arbitral forum is integral to the parties' agreement to arbitrate, a court looks to the essence of the agreement.  *Carr*, 241 Ill. 2d at 22, 944 N.E.2d at 331; *Brown v. Delfre*, 2012 IL App (2d) 111086, ¶ 16, 968 N.E.2d 696.  If the designation of the arbitral forum and the agreement to arbitrate are of equal importance, then the designation of the arbitral forum is integral and an alternate forum may not be substituted.  *Carr*, 241 Ill. 2d at 22, 944 N.E.2d at 331; *Brown*, 2012 IL App (2d) 111086, ¶ 16, 968 N.E.2d 696.

¶ 22    In this case, the arbitration rider does not use explicit language indicating that the NAF is the exclusive arbitral forum.  But, as discussed earlier, the arbitration rider specifically mandates that the arbitration of disputes "shall" be conducted under the 1999 NAF Code and specifically directs that copies of the rules and claim forms may be obtained

from the NAF and that claims may be filed with the NAF. After considering the arbitration rider as a whole and viewing each provision in light of the others, we have determined that the parties intended to arbitrate their disputes exclusively before the NAF, governed by the 1999 version of the NAF Code. The language in the arbitration rider demonstrates that the designation of the NAF as the arbitral forum, the designation of the 1999 NAF Code, and the agreement to arbitrate were of equal importance. Because the designation of the NAF as the arbitral forum and the agreement to arbitrate were of equal importance, the designation of the NAF was integral to the parties' agreement to arbitrate. Accordingly, section 5 cannot be used to appoint a substitute arbitrator and thereby salvage the arbitration rider. *Carr*, 241 Ill. 2d at 26, 944 N.E.2d at 333.

¶ 23    Further, setting aside for a moment the "integral versus ancillary" debate over the NAF's designation, there emerges another clear and basic reason why section 5 of the FAA cannot be invoked in the case. The arbitration rider, by its very terms, incorporates only sections 1 through 4 of the FAA. Section 5 of the FAA is not referenced in the rider. The arbitration rider was crafted by the defendants. It is reasonable to infer that by incorporating only the first four sections of the FAA, the defendants intended to omit the procedural sections of the FAA and to rely instead on the provisions in the 1999 NAF Code to govern the arbitration proceedings. To rewrite the arbitration rider to include section 5 of the FAA would violate basic principles of contract law and run contrary to the clear intent of the parties as expressed in the plain language of their agreement. Because section 5 of the FAA was intentionally omitted from the parties' agreement, the procedural mechanism in section 5 cannot be employed to appoint a substitute arbitrator and thereby save the arbitration rider.

10

¶ 24          The NAF Code & Enforceability of the Arbitration Rider

¶ 25    Next, we consider whether the applicable version of the NAF Code authorizes the appointment of a substitute arbitrator where the designated arbitrator is unavailable. In this case, the arbitration rider clearly and unequivocally states that any disputes "shall" be governed by the NAF Code in effect on the day of the agreement, May 18, 1999. The use of the mandatory language "shall" demonstrates the parties' intent that the rules in the 1999 NAF Code would govern any arbitrable disputes. The 1999 NAF Code was inextricably woven into the fabric of the arbitration agreement. Thus, the 1999 NAF Code was integral to the agreement to arbitrate, and it cannot be excised as some ancillary term.

¶ 26    Given the importance of the 1999 NAF Code, it is almost inconceivable that it was not produced in the circuit court. When the defendants filed their motions to compel arbitration, they included the 1999 arbitration rider and an affidavit attesting to the authenticity of that document, but they did not attach the 1999 NAF Code. In subsequent pleadings, the defendants attached and referenced portions of the 2005 NAF Code. A copy of the 2003 NAF Code was included with the plaintiff's pleadings. Because the defendants moved to compel arbitration, it was initially their burden to establish the enforceability of the arbitration agreement. *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983, 835 N.E.2d 113, 121 (2005). Any doubts about enforceability that arise from the absence of the 1999 NAF Code are resolved against the defendants.

¶ 27    The dissent, however, contends that it was the plaintiff's burden to present a sufficiently complete record to support her claims of appellate error and that any doubts about the enforceability of the arbitration agreement that arise from the absence of the 1999

11

NAF Code should be construed against the plaintiff. In making this argument, the dissent has entwined the defendants' burden of proof in the trial court and the plaintiff's duty in the appellate court. The appellant has a duty to present a sufficiently complete record of the proceedings in the trial court to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). The appellant may not supplement the record on appeal with documents that were available but not presented to the trial court. See Ill. S. Ct. R. 329 (eff. Jan. 1, 2006) (a party may supplement the record on appeal only with documents that were actually before the trial court); *Deason v. Gutzler*, 251 Ill. App. 3d 630, 631, 622 N.E.2d 1276, 1278 (1993). By all accounts, the record on appeal contains the complete record of proceedings before the circuit court. This is not a case where the appellant failed to include some portion of the circuit court record. The 1999 NAF Code was never presented to the trial court, and the trial court never considered it. As the party moving to compel arbitration, the defendants had the burden to establish the validity and enforceability of the arbitration agreement. The plaintiff had no duty to make the defendant's record in the trial court, and the plaintiff could not include, in the record on appeal, a document that was not actually before the trial court. As such, any doubts arising from the absence of the 1999 NAF fall squarely on the defendants.

¶ 28    In this case, we do not have the text of the 1999 NAF Code. Therefore, we have no means to determine whether the 1999 NAF Code would permit the appointment of a substitute arbitrator, and if so, under what circumstances. See *Carr*, 241 Ill. 2d at 31-32, 944 N.E.2d at 336.

12

¶ 29 The absence of the 1999 NAF Code presents additional obstacles to the enforceability of the arbitration rider. The parties are, without their designated rules of procedure, mandated by the language of the rider itself. Can a different code of procedure be implemented, and if so, who decides which code should be used? Where is the claim to be filed, and what is the filing fee? What are the powers and duties of the substitute arbitrator? What rules determine the availability and the scope of discovery, the format of the hearing, the introduction of evidence, and the costs of arbitration? Who will be obligated to pay those costs? In the absence of access to the 1999 NAF Code, any findings by this court regarding those questions are based on pure speculation. See *Carr*, 241 Ill. 2d at 31-32, 944 N.E.2d at 336.

¶ 30 In this case, the plain language of the arbitration rider reveals that the parties never intended that this court, or the circuit court, would choose the rules of procedure by which this arbitration would proceed. The parties agreed that the arbitration of any disputes would be governed by a specific set of procedural rules, the 1999 NAF Code. The procedural rules set forth in sections 5 through 16 of the FAA were specifically excluded. The 1999 NAF Code was an integral part of the parties' agreement to arbitrate, and it cannot be severed without gutting the arbitration rider. The absence of the 1999 NAF Code renders the agreement to arbitrate unenforceable.

¶ 31                     The NAF Consent Judgment

¶ 32 Finally, we pause to consider what level of confidence should be placed in the neutrality of the NAF Code in light of the consent judgment. Prior to 2009, the NAF was the largest forum in the United States for consumer-based arbitrations. When complaints of

fraud and deceptive practices were raised by consumers, the Minnesota Attorney General began an investigation into the NAF's practices, including the appointment of anti-consumer arbitrators. The Minnesota Attorney General found evidence that the NAF was not a neutral forum for consumer arbitrations as contemplated by the FAA and Congress. As a result of information obtained during the investigation, the Minnesota Attorney General filed a complaint against the NAF, alleging consumer fraud, deceptive trade practices, and false statements in advertising. Within a few weeks after the complaint was filed, the NAF settled the case with the Minnesota Attorney General. A court-approved consent judgment was entered on July 28, 2009. As part of the consent decree, the NAF agreed that it would not "accept any fee for processing any new Consumer Arbitration," and that it would not "administer or process any new Consumer Arbitration." See *Minnesota v. National Arbitration Forum, Inc.*, No. 27-CV-09-18550 (Minn. 4th Dist. Ct. July 17, 2009) (consent decree). Thus, the largest consumer-based arbitral forum in the United States agreed to cease all consumer arbitrations immediately.

¶ 33    In this case, the designated 1999 NAF Code was crafted by an entity that has been nationally discredited as an arbitral forum for consumer-based arbitrations. This should generate serious questions about the neutrality of the NAF Code, and the fundamental fairness and integrity of any proceeding conducted under the NAF Code. Such questions, while troubling, are not presently before this court and must be saved for another day.

¶ 34                                              CONCLUSION

¶ 35    In summary, the unavailability of the NAF and the absence of the 1999 NAF Code leave the parties without their designated arbitrator and the rules specifically chosen to

14

govern the arbitration. The designation of the NAF as the arbitral forum and the term mandating use of the 1999 NAF Code were integral to the parties' agreement to arbitrate. The arbitration rider specifically omitted the procedural rules set forth in sections 5 through 16 of the FAA, leaving the court without any rules by which this arbitration should proceed. It is not within the province of this court, or the trial court, to rewrite the arbitration rider to reinstate omitted terms or to add new terms. Such actions would violate basic rules of contract law and run contrary to the clear intent of the parties as expressed by the plain language in the arbitration rider. The unavailability of the NAF as an arbitral forum and the absence of the 1999 NAF Code render the parties' agreement to arbitrate unenforceable.

¶ 36 Accordingly, the order of the circuit court granting the defendants' motion to compel arbitration is reversed, and the cause is remanded for further proceedings.

¶ 37 Reversed and remanded.

¶ 38 PRESIDING JUSTICE SCHWARM, dissenting.

¶ 39 I respectfully dissent. The majority argues that the arbitration rider contains an "agreement, albeit implicit, *** that the parties intended to arbitrate their disputes before the NAF." *Supra* ¶ 14. However, the language of the arbitration rider does not support this conclusion. The arbitration rider states that "[a]ll disputes *** arising from *** the loan *** shall be resolved by binding arbitration, and not by court action." The arbitration rider states that claims *can* be filed at any NAF office but does not require it. The arbitration rider concludes with a block-letter disclaimer stating that the signee is "AGREEING TO HAVE ANY DISPUTE ARISING OUT [OF] THE MATTERS DESCRIBED *** ABOVE

15

DECIDED EXCLUSIVELY BY ARBITRATION." Thus, the arbitration rider has no language stating that the NAF must act as arbitrator. This case is unlike *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 944 N.E.2d 327 (2011), where the arbitration agreement contained a clause "that allowed the arbitrator to impose monetary penalties on a party for bringing a dispute in any forum other than the NAF." *Id.* at 20, 944 N.E.2d at 329. Because the arbitration rider in this case lacks a penalty provision or any other clause with a similar effect, it does not contain an agreement, even implicitly, that all disputes be arbitrated before the NAF.

¶ 40 Further, the designation of the NAF's Code of Procedure without designating the NAF as arbitrator indicates that the NAF was not considered to be the exclusive arbitrator for any dispute. In *Brown v. Delfre*, 2012 IL App (2d) 111086, 968 N.E.2d 696, the parties had agreed to an arbitration agreement stating that arbitration would be " '*conducted by and according to the securities arbitration rules then in effect of the* [arbitration company].' " (Emphasis in original.) *Id.* ¶ 4. The appellate court noted that the plain language stated only that arbitration "[would] be conducted 'by and according to' the rules" of the arbitration company. *Id.* ¶ 19. The court noted that "if the parties contemplated that [the arbitration company] would be the exclusive arbitral forum, there would be no need to specify that the arbitration must be conducted by [the arbitration company's] rules." *Id.* ¶ 20. The court ultimately determined that the arbitration agreement did not require the use of the arbitration company as arbitrators and, therefore, held the circuit court erred in finding the arbitration agreement unenforceable. *Id.* ¶ 29. Similarly, if the parties in our case intended to have the NAF arbitrate all disputes, then the arbitration rider would not need to state that it was to be

16

governed by the NAF's Code of Procedure. Thus, the statement that arbitration was to be governed by the NAF's Code of Procedure without an indication that NAF was to be the exclusive arbitrator supports the inference that the NAF was not to be the exclusive arbitrator.

¶ 41    The majority further argues that the arbitration rider's failure to include section 5 of the FAA prevents us from affirming the circuit court's decision. However, because the arbitration rider does not designate the NAF as exclusive arbitrator, the lack of a right to substitute arbitrator should have no bearing on this case. The arbitration rider did not require that NAF act as exclusive arbitrator, and we therefore are not being asked to appoint a substitute arbitrator to "replace" the NAF. The circuit court's order simply compels the parties to settle their dispute before an agreed-upon arbitrator. Because no arbitrator has been a part of this case, the arbitration rider's failure to include the FAA provision regarding procedures to appoint a substitute arbitrator should not affect our decision.

¶ 42    If the NAF were intended as an exclusive arbitrator, the parties may have included that information in the 1999 NAF Code governing the arbitration agreement. However, the 1999 NAF Code is not a part of the record. The majority argues that "it was initially [the appellees'] burden to establish the enforceability of the arbitration agreement" and thus determines that "[a]ny doubts about enforceability that arise from the absence of the 1999 NAF Code are resolved against the [appellees]." *Supra* ¶ 26. However, "[t]he law is well settled that the appellant bears the burden of presenting a sufficiently complete record to support her claim of error and any doubts arising from the incompleteness of the record will be resolved against her." *Lewandowski v. Jelenski*, 401 Ill. App. 3d 893, 902, 929 N.E.2d

114, 123 (2010). "When the appellant has failed to present this court with a complete record, the reviewing court must indulge in every reasonable presumption favorable to the judgment and will presume the trial court followed the law and had a sufficient factual basis for its ruling." *Id.* See also *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 22, 967 N.E.2d 411 (failure to include full transcripts of discovery depositions, response to motion for summary judgment, and transcript of hearing on the motion for summary judgment resolved against the appellant); *In re Estate of Matthews*, 409 Ill. App. 3d 780, 783, 948 N.E.2d 187, 191 (2011) (petitioner's failure to ensure her petition to vacate respondent's claim and the transcript of the hearing conducted on her petition appeared in the record on appeal interpreted against her even when her petition is attached on the appendix to her appellate brief); *Han v. Holloway*, 408 Ill. App. 3d 387, 390, 945 N.E.2d 45, 48 (2011) (absence of appellant's trial testimony, which was referenced throughout her brief and central to her argument on appeal, is interpreted against her). Thus, throughout civil law, failure to provide a sufficiently complete record is interpreted against the appellant. Even in criminal law, it is the appellant's burden to properly complete the record on appeal, and any doubts arising from the incompleteness of the record are construed against the appellant unless the appellant shows the record is incomplete due to no fault of his or her own and demonstrates there is a colorable need for the missing portion of the record in order to have appellate review. *People v. Henderson*, 2011 IL App (1st) 090923, ¶ 45, 961 N.E.2d 407. Therefore, any doubts about enforceability that arise from the absence of the 1999 NAF Code should be interpreted against the appellant, not the appellees.

18

¶ 43 Further, even if we could interpret the 1999 NAF Code's absence against the appellees, we should not do so in this case. The majority correctly notes that "[t]he party seeking to compel arbitration has the burden of proving that an arbitration agreement exists and that the claims raised are within the agreement's scope." *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983, 835 N.E.2d 113, 121 (2005). The appellees moved to arbitrate on December 15, 2004. This motion was denied on July 18, 2007, and this court reversed the circuit court and compelled arbitration on July 10, 2009. Throughout these proceedings, the appellees used the arbitration rider to show that the arbitration agreement existed and that the claims were within its scope. The 1999 NAF Code was not needed, nor likely relevant, to meet the appellees' burden. The 1999 NAF Code only became relevant when the appellant presented the motion leading to this appeal on September 23, 2009, after the appellees had successfully compelled arbitration. It was therefore the appellant's burden to submit the 1999 Code before the circuit court, just as it was her burden to provide it as part of a complete record on appeal.

¶ 44 The arbitration rider here stated repeatedly and clearly that it was to require that all disputes arising from the loan be resolved by binding arbitration. It contained no language requiring that the NAF act as exclusive arbitrator. It contained no penalty provision to be enforced if the parties chose an arbitrator other than the NAF. Based on the plain and obvious meaning of the arbitration rider as a whole, it is clear that the parties' primary intent by the agreement was to arbitrate their disputes under NAF rules and not to require that the NAF serve as arbitrator. The arbitration rider does not implicitly show an agreement between the parties that the NAF will act as the exclusive arbitrator. Thus, the NAF is not

the exclusive arbitrator, and the failure to include section 5 of the FAA in the arbitration rider is irrelevant because there has been no need for a substitute arbitrator. Moreover, even if the 1999 NAF Code could support the appellant's argument, it was the appellant's burden to include the 1999 NAF Code both in the circuit court and on appeal, and any doubts arising from its absence should be construed against the appellant. Therefore, I respectfully dissent.

2016 IL App (5th) 150360

NO. 5-15-0360

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ROSEMARY KEEFE, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04-L-502 |
| ALLIED HOME MORTGAGE CORPORATION and ALLIED HOME MORTGAGE CAPITAL CORPORATION, | ) ) ) ) | Honorable Vincent J. Lopinot, |
| Defendants-Appellees. | ) ) | Judge, presiding. |

_____

**Opinion Filed:**       **November 28, 2016**

_____

**Justices:**       Honorable Judy L. Cates, J.

              Honorable James R. Moore, J.,
              Concurred
              Honorable S. Gene Schwarm, P.J.,
              Dissented

_____

**Attorneys for Appellant**       Jeffrey J. Lowe, James J. Rosemergy, Carey, Danis & Lowe, 8235 Forsyth Blvd., Suite 1100, St. Louis, MO 63105

_____

**Attorney for Appellees**       Michael A. Brockland, Cosgrove Law Group, LLC, Pierre Laclede Tower II, 7733 Forsyth Blvd., Suite 1675, St. Louis, MO 63105

_____