THE 400 CONDOMINIUM ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* THOMAS M. TULLY, Cook County Assessor, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 78-873

Opinion filed December 19, 1979.

Gerald Rose, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs 400 Condominium Association and American National Bank & Trust Company brought this action against certain Cook County officials to enjoin the assessment and levy of a tax on a garage of certain condominium property. Plaintiffs contend that taxing the garage separately from the condominium units violates the Condominium Property Act (Ill. Rev. Stat. 1975, ch. 30, par. 300 *et seq.*). Motions for summary judgment were filed by plaintiffs and defendants. Summary judgment was entered in favor of defendants, and plaintiffs' motion for summary

judgment was denied. We reverse and enter judgment in favor of plaintiffs.

In August 1973, property located at 400 E. Randolph Street in Chicago was converted into a condominium and named the Outer Drive East Condominium. Pursuant to the Act, the declaration of condominium ownership, articles of incorporation, and bylaws were recorded with the Cook County recorder of deeds. Under the declaration, the condominium consists of 955 units (938 residential and 17 commercial). Pursuant to the declaration and the Act, each condominium unit owner owns a unit, together with "the percentage of ownership in the common elements appertaining to such unit as computed and set forth in the declaration * * *." (Ill. Rev. Stat. 1975, ch. 30, par. 306.) Both the Act and the declaration define the terms unit and common elements. But the terms are defined more extensively in the declaration, which also designates the garage as a common element. The declaration further provides that the garage is to be leased to a third party, and the limited parking spaces are to be rented on the basis of a fee.

For the tax year 1973, a single real estate tax was assessed against the entire condominium. It was paid by each of the 184 unit owners in proportion to his corresponding percentage of unit ownership and ownership of the common elements. For the tax year 1974, a real estate tax was assessed and levied against each unit; a separate real estate tax was assessed and levied against the garage. The bill for the units was in excess of $940,000. The separately assessed garage tax bill was $127,574.47. Testimony revealed that the assessor's office had ordered that a separate parcel number be given to the garage for the tax year 1974 because it generated revenues from the lease. For the tax year 1975, the tax bill for the garage was one dollar.

Plaintiffs brought this suit to enjoin taxing the garage separately from the condominium units. The court entered a preliminary injunction restraining defendants from extending, equalizing, collecting or attempting to collect any tax on the garage for the tax year 1974. Later, the court denied plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment.

Plaintiffs initially argue that the separate assessment of the garage violates the prohibition against separate taxation of units and common elements under section 10 of the Act (Ill. Rev. Stat. 1975, ch. 30, par. 310). Section 10 provides:

> "Real property taxes * * * *shall* be assessed against and levied upon *each unit and the owner's corresponding percentage of ownership in the common elements as a tract,* and not upon the property as a whole." (Emphasis added.)

Unless otherwise provided, unit is defined under the Act as "a part of the

property including one or more rooms, occupying one or more floors or a part or parts thereof, designed and intended for any type of independent use, and having lawful access to a public way." (Ill. Rev. Stat. 1975, ch. 30, par. 302(d).) The term common elements is defined as "all portions of the property except the units." Ill. Rev. Stat. 1975, ch. 30, par. 302(e).

■■ Section 10 mandates a legislative determination to tax the individual condominium unit rather than the entire real estate property. (See Kane & Helms, *The Illinois Condominium Property Act*, 1970 U. Ill. L. F. 157, 171; see also 1 Ferrer & Stecher, Law of Condominium §129, at 238-39 (1967).) The importance of taxing the individual condominium unit is that any owner's failure to pay real estate taxes or special assessments on his unit ownership do not affect in any manner whatsoever the title to the other unit ownerships in the condominium. Separate taxation prevents a tax foreclosure against any part of the property except the unit ownership of the defaulting owner. (See Kane & Helms, 1970 U. Ill. L. F. 157, 170.) Thus, the individual condominium owner is insulated from the liabilities of the other condominium owners. See McCaughan, *The Florida Condominium Act Applied*, 17 U. Fla. L. Rev. 1, 12 (1964).[1]

■■ ■ By using the word "shall" under §10, the legislature clearly evidenced its intent that the tax *must* be imposed on the owner's unit *and* corresponding percentage of ownership of common elements. Although the word "shall" is generally interpreted as a mandatory rather than a directory term, courts must still consider the nature and purpose of the statute involved when construing the word. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 20-22, 373 N.E.2d 1332, 1334-36.) The nature and purpose of the Condominium Act demonstrate that shall is a mandatory term in this context. Since insulating the unit owners from the liabilities of each other is an integral purpose of creating condominiums, permitting separate taxation of the unit and the common elements would affect the owners' financial independence. This is because a failure by one owner to pay his common element assessment would force the others to pay it or have the common elements encumbered with a tax lien. See Clark, *Condominium: A Reconciliation of Competing Interests*, 18 Vand. L. Rev. 1773, 1784 (1965).

■ Defendants next argue that the garage comes within the statutory definition of a unit, and thus, is not a common element as designated in the declaration. Defendants therefore contend that the garage should be taxed as a unit, especially since it generates revenues from the lease. Defendants' argument is untenable for several reasons. First, although the

---

[1] We note that in order to obtain Federal Housing Authority guaranteed mortgages, taxation of the individual unit is required. These FHA mortgages were the key to the development of condominiums in the United States. See 1 Rohan & Reskin, Condominium Law & Practice §2.03, at 2-9 (1979).

declaration of ownership cannot supersede the Act, it can, if the condominium owners agree, supplement the statute, including statutory definitions such as unit and common elements. (Ill. Rev. Stat. 1975, ch. 30, par. 304(d).) In the Declaration, the definition of unit follows the language of the Act, but specifies in some detail what is included and excluded. Additionally, the declaration itemizes certain common elements such as the "garage." Since the statutory definitions can be modified (Ill. Rev. Stat. 1975, ch. 30, pars. 304(d), 302), these definitions were legally effective when the declaration was filed and accepted.[2]

■■ Defendants also argue that the legislature never intended an income-producing garage to be a common element. However, we find no legislative or legal support for this contention, and therefore, the argument is without merit. Moreover, under defendants' argument, a laundry with washers and dryers, or a meeting room which is rented out, would have to be included as a unit because they all produce income. It is apparent that, absent statutory language, mere production of income does not make a particular area a unit under the Act.

■■ We also note that defendants keep shifting positions on how the garage should be classified and taxed. For the tax year 1973, the garage was classified and taxed as a common element. The 184 unit owners paid their separate tax bills. For the tax year 1974, the garage was assessed a $127,000 tax as a unit. For the tax year 1975, the tax for the garage was $1. This may be significant, because a substantial reduction in the tax bill is indicative of the validity of the prior tax year's assessment. *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 90, 322 N.E.2d 833, 836.

Moreover, this shift in positions from tax year 1973 to tax year 1974 would violate other sections of the Act and impair the condominium title of the 184 unit owners who bought before the 1974 tax year reclassification. Specifically, section 8 of the Act prohibits partition of the common elements and section 6 provides that the unit owner is entitled to his percentage of common elements as *set forth in the declaration.* (Ill. Rev. Stat. 1975, ch. 30, pars. 308, 306.) Since the garage was set forth in the Declaration as a common element, allowing defendants' reclassification to stand would violate the prohibition against partition of common elements under section 8. Furthermore, if defendants' argument is adopted, the titles of the 184 unit owners would be clouded because, contrary to

---

[2] Effective January 1, 1978, section 2 of the Act has been amended to add other definitions including "limited common elements." Those elements are "a portion of the common elements so designated in the declaration as being reserved for the use of a certain unit or units to the exclusion of other units, including but not limited to ° ° ° *parking spaces or facilities.*" (Emphasis added.) (Ill. Rev. Stat., 1978 Supp., ch. 30, par. 302(s).) In the instant case, the Declaration's designation of the garage as a "common element" controls since this amendment shall not "affect the validity of any provisions of any instrument recorded before the effective date hereof." (Section 2 of the Amendatory Act of 1977 (P.A. 80-1102).) Here, the declaration was recorded in 1973, prior to this amendment.

section 7 of the Act, these owners would *not* be able to convey or transfer their corresponding percentage of ownership in the common elements. Ill. Rev. Stat. 1975, ch. 30, par. 307.

■ Plaintiffs contend that because the assessment of the tax was unauthorized by law the court had equity jurisdiction to enjoin the assessment of the tax. In *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 105, 306 N.E.2d 299, 301, the court stated:

> "In the field of taxation the general rule applies that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists. [Citation.] This general rule has been held by this court to be subject to two exceptions. *A taxpayer need not look to the remedy at law but may seek relief by way of injunction where the tax is unauthorized by law* or where it is levied upon property exempt from taxation. *These two situations constitute independent grounds for equitable relief and in such cases it is not necessary that the remedy at law be inadequate.* [Citations.] In cases involving the two exceptions the remedy provided by statute is not exclusive, but the two remedies, that is, the statutory remedy and the remedy of injunction, are cumulative and the taxpayer may elect to pursue either one. [Citations.]" (Emphasis added.)

■ In the present case, the assessed tax on the garage was not authorized by law because section 10 of the Act prohibits separate taxation of the unit and its common elements. Thus, the plaintiffs need not look to the remedy at law but may seek relief by way of injunction. See *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 105, 306 N.E.2d 299, 301; *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 254-58, 52 N.E.2d 177, 182-83.

Defendants argue that the plaintiffs may not obtain injunctive relief. Defendants insist that the plaintiffs may only look to their remedy at law, *i.e.*, paying the tax under protest and filing objections to the application for judgment. Defendants rely upon *Inolex Corp. v. Rosewell* (1978), 72 Ill. 2d 198, 380 N.E.2d 775, and *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507. Those cases are inapposite because in the present case we are dealing with a tax that is unauthorized by law; those cases do not involve the assessment or levy of a tax that was unauthorized by law. The distinction and the different relief available are readily apparent by what the court said in *Inolex*, 72 Ill. 2d 198, 201-02, 343 N.E.2d 775, 776-77:

> "The rule here applicable is that the collection of taxes will be enjoined only where the tax is either unauthorized by law or levied upon exempt property. [Citations.] We have considered the authorities cited by plaintiff and find apposite here the following language from *North Pier Terminal*:

'We emphasize, however, that we are discussing only the *power* of the assessor to function. We are not deciding the validity of the tax as levied on the assessments in question. The defects of which the plaintiffs complain are essentially procedural irregularities in the assessment process which, while they may have a bearing on the question of the validity of the taxes levied, do not establish the lack of authority of the assessor to act. Thus, as noted in the cases cited below, the taxes are not "unauthorized by law."

This court has long held that if "officers authorized to make the assessment make it, then mere irregularities in the proceedings under which it was made cannot give a court of chancery jurisdiction to restrain its collection." [Citations.]

We conclude that the taxes involved in this case are not "unauthorized by law" and that a basis for equitable relief as defined in *Clarendon* is not present. Plaintiffs had an adequate remedy at law by way of paying the taxes under protest and filing objections to the application for judgment. The trial court therefore erred in granting equitable relief.'
· [Citation.]" (Emphasis in original.)

Here, unlike *Inolex* and *North Pier Terminal*, the taxes involved are unauthorized by law and, therefore, a basis for equitable relief as defined in *Clarendon* is present.

Accordingly, the summary judgment in favor of defendants is reversed and judgment is entered in favor of the plaintiffs. The defendants are hereby permanently enjoined from assessing, levying or collecting the said unauthorized tax on the garage for the tax year 1974.

Reversed.

O'CONNOR and HARTMAN, JJ., concur.