FOURTH DIVISION

        February 11, 2004

1-02-2120

LAKE POINT TOWER GARAGE ASSOCIATION,   )    Appeal from the

LAKE POINT TOWER CONDOMINIUM           )    Illinois Property

ASSOCIATION, and HARBOR POINT          )    Tax Appeal Board,

CONDOMINIUM ASSOCIATION,               )  

                                       )

             Petitioner,               )    

                                       )

                  v.                   )

                                       )

THE PROPERTY TAX APPEAL BOARD          )    Illinois Property

                                       )    Tax Appeal Board

          and                          )    

                                       )

COOK COUNTY BOARD OF REVIEW,           )

                                       ) 

             Respondents.              )

PRESIDING JUSTICE QUINN delivered the opinion of the court:

After a hearing, the Illinois Property Tax Appeal Board (PTAB) affirmed the Lake Point Tower level "A" parking garage (level "A") assessment of $633,184 for each of the tax years of 1997 and 1998.  The Lake Point Tower Association (Tower Association) and Lake Point Garage Association (Garage Association) bring this consolidated appeal alleging (1) level "A" was a common area and thus subject to pay $1 in property tax for each of the tax years of 1997 and 1998; and (2) the PTAB violated the Tower and Garage Associations' constitutional right of equal protection by failing to assess the property tax of level "A" as other similar properties.  Although the original action before the PTAB involved numerous taxpayers and their properties, the only property on this appeal is the level "A" parking garage.  For the reasons that follow, we affirm.

   BACKGROUND

Lake Point Tower (Tower) is primarily a residential high-rise condominium building with an adjoining parking garage.  The Tower is 70 stories tall and consists of 718 residential units.  There is a restaurant, a market, a coin-operated laundry, a dry cleaner, a travel agency, a ticket broker, a nail salon and a company called American Invesco located inside the Tower.  The building is managed by the Tower Association.

The garage, which is underneath the residential tower, consists of four parking levels - "A," "B," "C," and "D."  Levels "B," "C" and "D" consist of 436 parking spaces.  These are private parking spaces owned by the residents of the Tower.  Level "A" is located on the basement level of the Tower.  It has over 300 parking spaces.  Since there are 718 residential units in the Tower, with 436 parking spaces available on parking levels "B" to "D," many of the residential units that do not have a parking space on those floors rent parking spaces on level "A."  Level "A" was initially owned by the building developer, Lake Point Tower Limited Partnership.

In 1996, the developer converted level "A" into a condominium by the filing of a separate condominium declaration.  Level "A" became governed and managed by a new and separate association - the Garage Association. 

On March 7, 1997, the Tower Association purchased level "A"

from the developer because the developer was considering allowing the public to park on level "A."  The Tower Association paid $3.2 million for level "A."  When the Tower Association bought level "A," it was identified as "Unit A-1" or "Unit No. A-1" in the garage condominium declaration.  The Tower Association became a member of the Garage Association.

After purchasing level "A," the Garage Association retained Standard Parking to oversee its daily operation.  Standard Parking provided valet parking services on level "A" and monthly parking to some of the residents of the tower.  It also provided daily or hourly parking for the visitors of the residents and to business patrons of the Tower.  Some employees of the commercial businesses located in the Tower also rented parking spaces on a monthly basis on level "A."  

The president of the Tower Association, John Houston, testified that the Tower's residents' monthly rentals make up approximately 75% of level "A"'s total revenue, and the rest of the revenue come from transient visitors.  Houston further testified that should the demand for residential monthly parking exceed the number of the parking spaces available, all transient parking would be terminated to accommodate the residents of the Tower.

In 1997 and 1998, level "A"'s assessment was $633,184 for each of the tax years.  The Tower and Garage Associations appealed to the Cook County Board of Review arguing that level "A" should be subject to a $1 tax assessment because it was a common area for recreational or similar residential purposes. The Board of Review found that level "A" was designated as a condominium unit according to the Garage Association declaration.  As such, level "A" was not a common area under the Illinois Condominium Property Act.  765 ILCS 605/1 
et seq
. (West 1996).  Consequently, level "A" was not eligible for the special $1 assessment under either the Condominium Property Act or the Illinois Property Tax Code (35 ILCS 200/10-35(a) (West 1996)).  The Tower and Garage Associations appealed to the PTAB.  After a hearing, the PTAB affirmed the Board of Review's ruling.  On appeal, the Tower and Garage Associations assert that (1) level "A" was a common area and thus subject to $1 in property tax for each of the tax years of 1997 and 1998; and (2) the PTAB violated the Tower and Garage Associations' constitutional right of equal protection by failing to assess the property tax of level "A" as other similar properties. 

ANALYSIS

Standard of Review

An administrative agency's determination regarding questions of law is reviewed 
de novo
.   
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  An agency's interpretation of a statute is a question of law.  
Albazzaz v. Department of Professional Regulation
, 314 Ill. App. 3d 97, 105 (2000).  An agency's rulings regarding mixed questions of fact and law are not to be disturbed unless they are clearly erroneous.  
Belvidere
, 181 Ill. 2d at 205.  Under the clearly erroneous standard, a reviewing court should reverse an administrative agency's decision only if the court has a definite and firm conviction that the agency was mistaken.  
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 395 (2001).   As the PTAB's decision in the instant case involved a mixed question of fact and law, we will apply the clearly erroneous standard in reviewing this case.

Section 10-35(a) 

On appeal, the Tower and Garage Associations assert that level "A"'s assessment should be $1 for each of the tax years of 1997 and 1998.  The Tower and Garage Associations cite to the Illinois Property Tax Code and Illinois Condominium Property Tax Act to support their arguments. 

We first look to the Illinois Property Tax Code to determine whether level "A" is eligible for the favorable assessment of $1 under this statute. 

The Illinois Property Tax Code provides, in pertinent part:

"(a) Residential property which is part of a development, but which is individually owned and ownership of which includes the right, by easement, covenant, deed or other interest in property, 
to the use of any common area for recreational or similar residential purposes
 shall be assessed at a value which includes the proportional share of the value of that common area or areas.

Property is used as a 'common area or areas' *** if it is a lot, parcel, or area, the beneficial use and enjoyment of which is reserved in whole as an appurtenance to the separately owned lots, parcels, or areas within the planned development. 

The common area or areas which are used for recreational or similar residential purposes and which are assessed to a separate owner and are located on separately identified parcels, shall be listed for assessment purposes at $1 per year." (Emphasis added.)  35 ILCS 200/10-35(a) (West 1996).

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
In re C.W.
, 199 Ill. 2d 198, 211 (2002).  Where the language of a statute is certain and unambiguous, a court will apply the statute without resort to further aids of statutory construction.  
In re D.L.
, 191 Ill. 2d  1, 9 (2000).  

Pursuant to the terms of section 10-35(a), only the common areas of a planned development that are actually used for recreational or similar residential purposes are eligible for the favorable assessment. 35 ILCS 200/10-35(a) (West 1996). 

In 1997, when the Tower Association purchased level "A," the Garage Association declaration defined level "A" as "Unit A-1" or "Unit No. A-1." 

According to the Condominium Property Act, a " '[u]nit' means a part of the property designed and intended for any type of independent use." 765 ILCS 605/2(d) (West 1996).  "'Common Elements' means all portions of the property except the units, including limited common elements unless otherwise specified." 765 ILCS 605/2(e) (West 1996).  Since level "A" was classified as a "unit," it simply could not be a common area at the same time. 

Furthermore, it is undisputed that Standard Parking oversaw level "A" in 1997 and 1998.  Standard Parking provided a valet parking service on level "A."  Residents of the Tower rented parking spaces on level "A" on a monthly basis.  The employees of the businesses located in the Tower rented parking spaces on a daily basis and patrons of the businesses and transient visitors would pay hourly rates.  Standard Parking charged different rates to different clients.  The hourly parking rate was as high as $12 per hour.  These facts demonstrate Standard Parking was operating a commercial parking business.  A commercial parking business certainly does not fall within the ambit of "recreational or similar residential purposes."  Since level "A" was neither a common area, nor was it used for  recreational or similar residential purposes, it did not qualify for the favorable assessment of $1 under section 10-35(a) of the Property Tax Code.  35 ILCS 200/10-35(a) (West 1996).

Section 10(a)

Next, we look to the Illinois Condominium Property Act to determine whether level "A" is eligible for the favorable assessment.

The Illinois Condominium Property Act provides, in pertinent part: 

"(a) For purposes of property taxes, real property owned and used for residential purposes by a condominium association, including a master association, but subject to the exclusive right by easement, covenant, deed or other interest of the owners of one or more condominium properties and 
used exclusively by the unit owners for recreational or other residential purposes shall be assessed at $1.00 per year
. *** In counties containing 1,000,000 or more inhabitants, any person desiring to establish or to reestablish an assessment of $1.00 under this Section shall make application therefor and be subject to the provisions of Section 10-35 of the Property Tax Code." (Emphasis added.)  765 ILCS 605/10(a) (West 1996).

Pursuant to the terms of the Condominium Property Act, in order to qualify for the assessment of $1, the subject property must be "
used exclusively by the unit owners for recreational or other residential purposes
."  (Emphasis added.) 765 ILCS 605/10(a) (West 1996).

In this case, level "A"'s parking spaces were rented to Tower residents, visitors, employees and patrons of the businesses in the Tower.  Employees and patrons of the businesses were not residents of the Tower.  As such, level "A" was not used exclusively by the unit owners for recreational or other residential purposes.  Thus, the PTAB correctly decided that level "A" did not qualify for the favorable assessment under the Condominium Property Act.

The common threads between the Property Tax Code and the Condominium Property Act are that in order to benefit from the favorable assessment of $1, the subject property must be used "for recreational or other similar purposes."  35 ILCS 200/10-35(a) (West 1996); 765 ILCS 605/10(a) (West 1996). 

In 
Ozuk v. River Grove Board of Education
, 281 Ill. App. 3d 239, 243, (1996), we defined "recreation" as the " 'refreshment of the strength and spirits after toil.' "  
Ozuk
, 281 Ill. App. 3d at 243, quoting Webster's Third New International Dictionary 1899 (1986).  "Recreational" and "residential" do not include activities of a commercial nature.  See 
Ozuk
, 281 Ill. App. 3d at 243.

Our supreme court's recent opinion in 
Rexroad v. City of Springfield
, 207 Ill. 2d 33 (2003), also sheds light on this issue.  
In 
Rexroad
, the plaintiff was a high school football player.  One day during practice, the plaintiff was asked to retrieve a helmet for a teammate from the locker room.  After retrieving the helmet, the plaintiff had to walk through a parking lot to return to the field.  While walking through the parking lot, the plaintiff stepped into a hole and broke his ankle.  Plaintiff filed suit.  The defendant municipality argued that section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) applied: "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of 
any public property intended or permitted to be used for recreational purposes, including but not limited to
 parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added.) 745 ILCS 10/3-106 (West 1994).  Springfield argued that the school was immune from the suit based on section 3-106.

In reversing the appellate court's affirmance of the trial court's summary judgment order for the defendant, our supreme court held that "immunity depends on the character of the property in question, not the activity performed at any given time," and "the character of the parking lot was not recreational."  
Rexroad
, 207 Ill. 2d at 43.

While 
Rexroad
 involved the Tort Immunity Act, its holding lends support to the PTAB's argument.  In this case, the character of level "A" was a revenue-generating commercial parking lot.
  Following the logic in 
Rexroad
, we fail to see how a commercial parking lot can be classified as being used for recreational or similar residential purposes.

On appeal, the Tower and Garage Associations rely on 
400 Condominium Ass'n v. Tully
, 79 Ill. App. 3d 686 (1979), and 
Cambridge-On-The-Lake Homeowners Ass'n v. Hynes
, 116 Ill. App. 3d 63 (1983), to support their arguments.

400 Condominium
 was decided prior to the current version of the Condominium Property Act.  The condominium declaration at issue in 
400 Condominium
 specifically designated the building's garage as a common element, rather than as a unit, as in the instant case.  Consequently, the appellate court held: "[t]he assessed tax on the garage was not authorized by law because Section 10 of the Act prohibits separate taxation of the unit and its common elements." 
400 Condominium
, 79 Ill. App. 3d at 691.  The appellate court noted that section 2 of the Condominium Act was amended in 1978 to define "parking spaces or facilities" as "limited common elements."  79 Ill. App. 3d at 690 n. 2.  This amendment did not apply to the garage at issue because the  condominium declaration was filed in 1973.  As the garage in 
400 Condominium
 was properly designated as a common element under the law in effect at the time, and considering the fact that level "A" was designated as a "unit" in the condominium declaration in the instant case, we hold that 
400 Condominium
 is inapplicable. 

Similarly, 
Cambridge-On-The-Lake
 is inapposite to this case  because that decision was governed by a statute that did not require that a parcel be used for "recreational or similar residential purposes" before qualifying the parcel for a $1 tax assessment.

EQUAL PROTECTION

Next, the Tower and Garage Associations argue that the PTAB violated the equal protection clause of the United States and Illinois Constitutions by levying a different tax on level "A" than that levied on other similar properties.

"As a general rule, issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review."  
Carpetland U.S.A., Inc. v. Illinois Department of Employment Security
, 201 Ill. 2d 351, 396-97 (2002).   A review of the record reflects that the Tower and Garage Associations did not raise the issue of an equal protection violation in the PTAB proceeding.  Thus, this issue is waived on appeal.

DOUBLE TAXATION

In their reply brief, the Tower and Garage Associations argue for the first time that the assessment of $633,184 to level "A" is tantamount to double taxation of the unit owners of the Tower Association because the value of level "A" is "necessarily subsumed in the value of each separately taxable residential unit."  This argument consists of one sentence.  Supreme Court Rule 341(e)(7) provides that points not argued in an appellant's brief are forfeited and shall not be raised in the reply brief.  155 Ill. 2d R. 341(e)(7).  Rule 341(e)(7) also provides that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."  155 Ill. 2d R. 341(e)(7).  Strict adherence to the requirement of citing the relevant pages of the record is necessary to expedite and facilitate the administration of justice.  
Maun v. Department of Professional Regulation
, 299 Ill. App. 3d 388, 399 (1998).  Arguments that do not satisfy Rule 341(e)(7)'s requirements do not merit consideration on appeal and may be rejected for that reason alone.  
Maun
, 299 Ill. App. 3d at 399.

At oral argument, counsel for the Tower Association was asked how much the assessed value of the Tower increased after level "A" was purchased.  Counsel replied that he did not know and acknowledged that the only relief appellants were seeking on appeal was a reversal of the PTAB's ruling that level "A" was not subject to the special $1 assessment under section 10-35(a).  Consequently, the issue of double taxation is waived on appeal.

Based on the foregoing, we affirm the PTAB's ruling that level "A" should not be subject to the $1 favorable tax treatment under section 10-35(a) of the Illinois Property Tax Code (35 ILCS 200/10-35(a) (West 1996)), or section 10(a) of the Condominium Property Act (765 ILCS 605/10(a) (West 1996)).

Affirmed.

HARTMAN and GREIMAN, JJ., concurring.