2025 IL App (1st) 241756-U

SECOND DIVISION
September 23, 2025

No. 1-24-1756

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| VIOLETTA JASKULA, INDIVIDUALLY, DERIVATIVELY AS SHAREHOLDER OF DISCOUNT ROOFING MATERIALS, INC., AS PRESIDENT OF SAVEMAX CONSTRUCTION, INC., AND AS TRUSTEE OF THE VIOLETTA JASKULA TRUST, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | 12CH20380 |
| DARIUSZ " DEREK" DYBKA, DISCOUNT ROOFING MATERIALS, INC., AN ILLINOIS CORPORATION, 2700 N. PULASKI, INC, AN ILLINOIS CORPORATION, AND 2700 NORTH PULASKI, LLC, AN ILLINOIS CORP, | ) ) ) ) ) ) | Honorable Caroline Kate Moreland, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiff's appellate challenges forfeited for repeated failures to cite the record on appeal, to articulate a legal argument, to cite authority, and to provide a complete record for this court's review.

¶ 2    Plaintiff, Violetta Jaskula and Defendant, Dariusz "Derek" Dybka were involved in an over 21-year personal relationship from 1989 to 2011, during which they had four children together,

and they never married. During that time, they also formed a professional relationship relating to the business, Discount Roofing Materials, Inc. (DRM). After the breakdown of their personal relationship, Jaskula and Dybka fought over their respective ownership in, and the value of, DRM and other related assets. After a more than two-week trial involving 11 witnesses, the court found that Jaskula and Dybka were each 50% owners in DRM. The court ordered an appraisal of the business, using a business valuation expert agreed to by the parties. On August 14, 2024, the trial court entered a final order requiring Dybka to purchase Jaskula's interest in DRM based on that valuation, and distributing escrow accounts to the parties. In this appeal, Jaskula raises several challenges to various rulings by the trial court. For the following reasons, we affirm.

¶ 3      The record shows that Jaskula filed this action against Dybka on June 1, 2012. The 14-count Fifth Amended complaint at issue in this appeal generally alleged that, after the parties ended their personal relationship in December 2011, Dybka "engaged in a series of actions intended to convert [Jaskula]'s interest in DRM, Inc., and otherwise deny [Jaskula] her rights as a shareholder." Jaskula alleged that Dybka wrongly removed Jaskula as a shareholder of DRM, locking her out of the business; that he fraudulently transferred the assets of DRM into a successor company, 2700 N. Pulaski, Inc. (2700); and that he improperly took assets of DRM "for his personal gain." Jaskula sought, among other things, a declaratory judgment that Jaskula was a 50% shareholder of DRM, a constructive trust on the ownership interest and assets of DRM, and an accounting to determine amounts that Dybka wrongly removed from DRM. Jaskula also alleged that Dybka violated section 12.56 of the Illinois Business Corporation Act (Corporation Act), which allows certain remedies to a shareholder in a nonpublic company if that shareholder can establish that "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder."

2

See 805 ILCS 5/12.56 (West 2012). Jaskula alleged that Dybka was acting in a manner that was "illegal, oppressive, or fraudulent with respect to" her, and that he "misapplied or wasted" DRM's assets. Jaskula asked the court to order Dybka to "account" for the disposition of funds from DRM to 2700, and to repay money "lost, wasted, or improperly diverted." Jaskula also alleged that Dybka committed fraud and conversion, and that he breached his fiduciary duty to her. Jaskula further contended that she, through the "Violetta Jaskula Trust," "purchased and owned" several properties on North Pulaski Road in which DRM operated (the Pulaski Properties), as well as two residential properties in Lake Forest (the Lake Forest Properties). Jaskula asked the court to declare that she was the sole owner of the Pulaski Properties and the Lake Forest Properties.

¶ 4    Dybka answered, generally denying that Jaskula was a 50% owner in DRM, and alleging that she had "no ownership interest" in the company. Dybka also filed several counterclaims seeking, among other things, a declaratory judgment that he was the sole owner of DRM, and that he had an ownership interest in the Pulaski Properties. Dybka also alleged that Jaskula misappropriated nearly $1,000,000 in funds from DRM, constituting conversion, and requested an accounting to determine amounts that she "wrongly t[ook] or withheld." Finally, Dybka alleged that he paid for expenses for the Lake Forest Properties since their purchase, and that Jaskula was being "unjustly enriched to the detriment of" Dybka through her interest in the properties.

¶ 5    On January 19, 2016, Jaskula filed a motion to appoint a receiver over DRM and 2700, to "protect the value of the corporate assets during the litigation." Dybka responded on April 21, 2016, arguing, among other things, that Jaskula's requested remedy was one that is available only to shareholders—Jaskula was never a shareholder in 2700, and "her claimed interest in DRM" was "contested." And regardless of whether Jaskula had an interest in DRM, that entity had been dissolved for four years and it had "no business or affairs to manage." Dybka also argued that

appointing a receiver is a "drastic remedy," and Jaskula did not meet her burden to show that remedy was necessary.

¶ 6    On May 16, 2016, the court entered a written order finding: "For the reasons stated on the record, [Jaskula]'s motion to appoint a receiver is denied." No transcript or acceptable substitute of the hearing on the motion to appoint a receiver appears in the record on appeal.

¶ 7    Thereafter, in March and April 2018, the court held a two-week trial on Jaskula's Fifth Amended Complaint and Dybka's counterclaims. The court heard testimony from 11 witnesses and admitted over 200 exhibits into evidence. A full recitation of the trial evidence is not necessary to the resolution of this appeal. In short, the court determined that the two crucial witnesses at that trial were Jaskula and Dybka.

¶ 8    As summarized by the trial court, Dybka testified that during the course of Jaskula and Dybka's relationship, he paid for "absolutely everything." Dybka testified that he and Jaskula had an oral agreement to put certain assets in her name, but that she was "never" his "partner" or an "owner" of DRM. Dybka testified that Jaskula was only a "theoretical owner" and that she was made an "owner" for "tax purposes only." Dybka testified that Jaskula "wrote all of these checks to herself, so [he] had no option, and [he] had to issue her a K-1 for tax purposes." Dybka also testified that they purchased certain properties in Jaskula's name because "her credit was very good and he didn't want to tie up his own credit." When asked why he dissolved DRM, Dybka testified that he wanted to "cut [his] ties" to Jaskula, and to "cut out [Jaskula] from [the] ability to interfere with [Dybka's] business."

¶ 9    Jaskula testified that in 1995, she asked Dybka if she could take over an old business that he had abandoned, Savemax, and he agreed. Jaskula testified that Dybka had very bad credit, and that she was the one who "paid for everything." Jaskula testified that in 2000, she and Dybka had

4

an oral conversation in which she agreed to come in as a partner in DRM. Dybka wanted her to "provide credit and make contributions" in exchange for a "50% share." Jaskula testified that she provided contributions from Savemax, and that she signed personal guarantees on behalf of the business. Jaskula also testified that between 2001 and 2011, she received K-1 statements reflecting a 50% ownership in DRM.

¶ 10 The court explained that between 2001 and 2011, Dybka submitted tax filings on behalf of DRM identifying Jaskula as a 50% owner. Then in 2012, Dybka attempted to amend the prior returns, reasoning to the IRS that Jaskula was "an officer of the corporation ***, but it turns out that she never became a shareholder in the corporation." The court noted, however, that the tax returns identifying Jaskula as a 50% shareholder were submitted by Dybka under penalty of perjury. The court rejected testimony from Dybka and other witnesses that the tax returns were "just a communication with the government and a way to allocate income."

¶ 11 The court found that both Dybka and Jaskula had credibility issues, and that both parties "used [each other] when it was convenient." In particular, the tax filings "impact[ed] [Dybka's] credibility" as he testified that he was "putting in factual information and passing it onto the government when in his mind he knows it's not true." The court also explained that there was testimony showing that Dybka was "[d]rawing up leases, phony leases" to help Jaskula qualify for a loan from a bank.

¶ 12 Jaskula, however, also suffered from credibility issues. She was also involved in using a "phony lease" to "get a loan." The court also noted other evidence showing that she was "lifting cash from [Dybka]'s pockets," and that she engaged in "frivolous and excessive spending."

¶ 13 Given the parties' issues of credibility and their "implicit bias against the other side and their bias in slanting their testimony to favor their position," the court found that it could not "trust

5

the credibility of either of these witnesses to *** decide the case on the merits based on one side or the other." Instead, the court relied heavily on the business tax returns filed for DRM, noting that Dybka filed tax returns for "eight or nine years" holding Jaskula out as a 50% shareholder in DRM. The court found that Jaskula was, indeed, a 50% owner in the business. The court also found the fact that Dybka had titled assets in Jaskula's name was evidence that he intended her to be an owner.

¶ 14    Accordingly, the court found in favor of Jaskula on her claim for a declaratory judgment, finding that she was a 50% shareholder in DRM. The court ordered a constructive trust on the ownership interest of DRM, and required Dybka to transfer 50% ownership to Jaskula. The court also found that Dybka breached a fiduciary duty to Jaskula, and that he violated the Corporation Act in his actions toward her. The court agreed to order an accounting for both parties, noting that each party needed to account for money they had taken from the business.

¶ 15    As for the Pulaski Properties, the court noted that title to the properties was held in Jaskula's trust, but that the evidence was clear that all the money to purchase and manage those buildings came out of the business. The court also granted Dybka's counterclaim for unjust enrichment regarding the Lake Forest Properties, finding that the expenses for those properties were likewise paid for by the business.

¶ 16    Finally, the court denied Jaskula's requests for attorney fees and for prejudgment interest.

¶ 17    Jaskula filed a motion to "clarify and reconsider" the trial court's order, which the court granted in part and denied in part in a written order on January 22, 2019. Among other things, the court explained that the record from the trial was clear that the Pulaski Properties were "purchased with a loan taken out by DRM," and they were to be "used for corporate commercial purposes." Despite title being put in Jaskula's name, the court found that they were "bought and used for the

benefit of DRM" and that "corporate funds paid for the[ir] maintenance and purchase." Accordingly, the court found that the Pulaski Properties were "a corporate asset of DRM" and that their value should be included in the accounting. The court also ordered the imposition of a constructive trust on the Pulaski Properties, with Jaskula and Dybka to be equal beneficiaries.

¶ 18    Regarding the Lake Forest Properties, the court clarified that the source of funds used on the properties came from the "jointly owned corporate accounts." The court found that it would "violate[ ] fundamental principles of equity and good conscience" to allow Jaskula to maintain sole ownership of the properties, and would amount to "unjust enrichment." Accordingly, the court ordered "the imposition of a constructive trust" on the Lake Forest Properties, "with the parties named as equal beneficiaries of that trust."

¶ 19    The court, however, reconsidered its prior denial of Jaskula's request for attorney fees, finding that "an award of attorneys' fees is appropriate here." The court explained that under section 5/12.60(j) the Illinois Business Corporation Act, an award of attorney fees "may be proper where the Court finds that a party *** acted 'arbitrarily, vexatiously, or otherwise not in good faith." 805 ILCS 5/12.60(j) (West 2018). The court found that Dybka's intention was to "cut [Jaskula] out" of the business and "get rid of her." The court found that Dybka "intentionally engaged in oppressive conduct in order to force [Jaskula] out of the business. His actions were vexatious and done with bad faith and a total disregard of his fiduciary duty to" Jaskula. Accordingly, the court granted Jaskula leave to file a petition for attorney fees and costs.

¶ 20    Finally, the court found that prejudgment interest was "not appropriate here." Although the court found that Dybka and the DRM parties "withheld funds to which [Jaskula] was entitled, the Court has similarly ruled that [Jaskula] wrongly asserted ownership and control over properties to

which the corporate Defendants were entitled." Based on the "misconduct by both parties," the court denied Jaskula's motion to reconsider the denial of prejudgment interest.

¶ 21    On September 3, 2021, the trial court entered an order directing the parties to list the Lake Forest Properties for sale, with the proceeds to be divided equally between the parties. Both properties sold in 2022, and their proceeds were placed into an escrow account pursuant to the court's order of January 19, 2022.

¶ 22    Meanwhile, Jaskula submitted her petition for attorney fees on April 12, 2019.

¶ 23    On September 30, 2019, the trial court entered an order on Jaskula's petition for attorney fees, noting that it had previously found that Jaskula was entitled to attorney fees under section 5/12.60(j) the Corporation Act. The trial court explained, however, that the "clear language of section 12.60(j) requires" that attorney fee awards are limited to claims brought under certain sections of the Corporation Act, including, as relevant here, section 5/12.56. See 805 ILCS 5/12.60(j) (West 2018) ("If the court finds that a party to any proceeding under Section *** 12.56 acted arbitrarily, vexatiously, or otherwise not in good faith, it may award one or more other parties their reasonable expenses, including counsel fees *** incurred in the proceeding."). Jaskula, however, made "no attempt *** to distinguish between work done on the section 12.56 claim and the work done on the myriad [of] other claims, counterclaims, and ancillary actions between the parties." Jaskula maintained that "every single claim and cause of action" in the Fifth Amended Complaint "arose out of the same facts that gave rise to" her claim for a violation of section 5/12.56 of the Corporation Act, and that, accordingly, "all fees should be compensated."

¶ 24    The court, however, found Jaskula's argument "absurd" and contrary to the plain language of the statute. The court concluded that her "purposeful conflation of the issues in this case precluded an award of attorney's fees at this stage because the Court is only empowered by statute

to award fees 'incurred in the 12.56 proceeding.' " Accordingly, the court struck Jaskula's petition "for failure to present a log of compensable fees."

¶ 25    Additionally, the court explained that the log submitted by Jaskula's attorneys in support of her petition did "not note the attorney who performed the service, despite the fact that some actions are billed at different rates." The records also "varied greatly in the level of detail," with numerous "vague" descriptions of services. Where Jaskula had not presented "detailed records of the services performed and the name of the person performing them," the court found that there was not sufficient evidence that the fees sought were reasonable.

¶ 26    Jaskula filed an amended petition for attorney fees on August 28, 2020.

¶ 27    On February 10, 2022, the trial court held a hearing at which it explained, again, that Jaskula bore the burden of showing that the fees sought were compensable and reasonable. The court stated that it had reviewed the amended petition and the fee log, and

> "Too many of the fees or invoices listed do not specify the claim, and the Court is not in a position where the Court has to take a highlighter and go through the fee petition to see what it will accept and what it will not, what applies and what does not. It's not the Court's job to determine the fees, it's [Jaskula's job] to present to the Court the fees that apply specifically to the 12.56 claim.
>
> The Court does not find that the fees presented are specific enough to the 12.56 claim. So the Court does not find [that Jaskula] has met [her] burden at this time. [Her] petition for attorney's fees is denied without prejudice. I will give [Jaskula] one more final opportunity to present a petition for attorney's fees specific only to the 12.56 claim."

¶ 28    Jaskula then filed a second amended petition on August 22, 2022.

9

¶ 29    The court held a two-day evidentiary hearing on Jaskula's second amended petition for attorney fees on December 5 and 6, 2023, at which the court heard testimony from three of Jaskula's attorneys, and an "expert witness." The court issued its ruling at a hearing on May 2, 2024. The court explained that it previously had concerns about whether the attorney fees Jaskula sought in her petition related to her claim brought under section 12.56 of the Corporation Act, noting Jaskula was seeking all of her attorney fees, despite the fact that the parties were "involved in six lawsuits between them," including a "child support case." The court stated that Jaskula's second amended petition for attorney fees had still not resolved the court's issue, so it had ordered an evidentiary hearing to determine which fees, if any, were compensable as part of that claim. The court explained that at the evidentiary hearing, Jaskula's attorneys "admitted there were vague" and "duplicate entries" in the log submitted. More importantly, however, the court found that "none of the entries designate which *** fees relate[d] to," the section 12.56 claim, and that "no one testified to any specific entries that were designated as relating to the 12[.]56 claim." Accordingly, the court found that Jaskula had not "met [her] burden," and denied her second amended petition for attorney fees and costs. The following day, on May 3, 2024, the court issued a written order denying Jaskula's second amended petition for attorney fees.

¶ 30    Meanwhile, the parties and the court continued to struggle with valuing DRM and its assets, with the court finding on multiple occasions that the accounting submitted by Dybka was "inadequate" or "not credible." On February 10, 2022, the trial court informed the parties that it was going to "require a business valuation." The court provided the parties with four options of business valuation experts who could be engaged to appraise the business, and asked if the parties could agree to one of the options. The parties agreed to engage Baker Tilly to perform the valuation.

¶ 31    On March 21, 2022, the court entered an order appointing Baker Tilly "to perform a full valuation appraisal of DRM Inc. as of December 31, 2011, based on a fair market value approach." Baker Tilly produced a valuation report dated March 3, 2023, finding that the fair market value of DRM Inc. as of December 31, 2011, was $837,300 excluding the assets and liabilities of the Pulaski Properties, or $654,400 including the assets and liabilities related to the Pulaski Properties.

¶ 32    The record also suggests that the trial court was considering an issue regarding a shareholder loan that Dybka had made to DRM. In particular, Dybka alleged that when DRM was created, he made an approximately $1.1 million loan to the company from his earnings and selling his properties, and he argued that the loan should be considered a liability of DRM. Jaskula argued that there was not "sufficient evidence of the shareholder loan and who put in the money of [*sic*] the shareholder loan." Jaskula asked the court to "exclude the shareholder loan altogether because there is just not enough evidence about who put in what to come to an accurate ruling on that."

¶ 33    Baker Tilly's report indicated that it was not including the shareholder loan to Dybka, or another $385,000 loan owed to DRM by Jaskula, because whether those were, respectively, a liability and an asset belonging to DRM were legal issues to be determined by the court.

¶ 34    On September 7, 2023, the trial court found that the value of the Pulaski Properties should be included in the value of DRM, and that the parties agreed that the loan owed by Jaskula was "not an asset of DRM." Regarding Dybka's shareholder loan, the court found that the shareholder loan was a liability to DRM. The court noted, however, that Dybka maintained that the loan was over $1 million, however the court had previously valued the loan at approximately $604,000, and the court found "no basis *** to reconsider that dollar amount." Accordingly, the court found that the "value of DRM is [$]654,000 less the liability of the shareholder loan of $604,917 for a total valuation of $49,083."

¶ 35    On May 8, 2024, Dybka filed a motion for an order to purchase Jaskula's ownership interest in DRM, and on June 27, 2024, Jaskula filed a petition to distribute the escrow accounts and for a final order. In briefing related to distribution of the escrow accounts, the parties disputed various expenses they paid toward the Lake Forest Properties, and Dybka maintained that Jaskula had received substantial rental income and benefit from residing in the properties without paying rent.

¶ 36    The court apparently held a hearing on Jaskula's petition to distribute the escrow accounts and Dybka's motion for an order to purchase Jaskula's ownership interest in DRM, but a copy of the transcript does not appear in the record on appeal. On August 14, 2024, the trial court entered a written order. "For the reasons stated on the record" the court ordered 2700 to purchase Jaskula's 50% shareholder and ownership interest in DRM for $24,741.50 by October 7, 2024. Upon payment, Jaskula's ownership "is released and extinguished." The court also directed the title company to distribute the escrow accounts "as follows: $395,479.71 to Violetta Jaskula *** and (b) $727,092.33 to Derek Dybka."

¶ 37    The court continued the matter for status of an ongoing replevin action that is not at issue in this appeal, further stating: "This is a final order of judgment in the Declaratory Judgment Action (Case No. 12 CH 20380). Pursuant to Illinois Supreme Court Rule 304(a), there is no just reason for delaying either enforcement or appeal or both of this order." Jaskula filed a timely notice of appeal from the August 14, 2024, order.

¶ 38    In this appeal, Jaskula raises a multitude of issues. Her appellate issues can generally be grouped into the following categories: that the court erred in (1) valuing DRM and distributing its assets, denying her a "fair remedy"; (2) choosing December 31, 2011 as the date to value DRM, rather than the date of trial; (3) failing to order Dybka to pay her attorney fees to sanction him for his "oppressive conduct"; (4) failing to grant her request for prejudgment interest; (5) failing to

grant her motion to appoint a receiver; and (6) splitting the Lake Forest properties between the parties.

¶ 39     As an initial matter, Dybka asks this court to dismiss Jaskula's brief for multiple violations of Rule 341. Dybka notes that Jaskula raises ten "Issues Presented for Review." Jaskula, however, does not organize her argument section to address each issue in turn, instead raising arguments related to each issue "scattered throughout her Brief," and she does not set forth the applicable standard of review for each issue, in violation of Rule 341(h)(3). Dybka also notes that Jaskula's brief is "ambiguous, confusing and fails to 'present clear and orderly arguments, so that the court can properly ascertain and dispose of the issues presented.' " Citing *Hall v. Naper Gold Hospitality LLC,* 2012 IL App (2d) 111151, ¶ 7. Dybka explains that Jaskula makes "lengthy and convoluted arguments that the trial court made egregious errors in its rulings that prejudiced her but there is no reference to which rulings are involved." Dybka also contends that Jaskula's arguments "are made with practically no citations to the record as required by Rule 341(h)(7)," and that failure to provide such citations should result in forfeiture of those arguments.

¶ 40     In her reply brief, Jaskula does not specifically address Dybka's arguments that her brief is deficient. She merely contends that Dybka is trying to avoid "addressing the merits of [her] argument" by "complain[ing] about the form of [her] brief," but that there is "no basis for this court to order any type of 'forfeiture.' "

¶ 41     We agree with Dybka that Jaskula's brief violates several Rules of appellate briefing.

¶ 42     "Supreme court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. "Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal." *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). In addition, this court may strike an appellant's brief for

noncompliance with Rule 341. See *People v. Thomas*, 364 Ill. App. 3d 91, 97 (2006); *In re Estate of Jackson*, 354 Ill. App. 3d 616, 620 (2004) ("A party's failure to comply with Rule 341 is grounds for disregarding its arguments on appeal." ). Striking a brief or dismissing an appeal for failure to comply with supreme court rules is, however, a harsh sanction, and "is appropriate only when the alleged violations of procedural rules interfere with or preclude review." *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005).

¶ 43    Initially, we note that this appeal is the culmination of a 12-year long legal saga, involving a multitude of issues and multiple trials. The record on appeal is more than 18,000 pages between the common law record and report of proceedings.

¶ 44    Rule 341(h)(6) provides that an appellant's brief "shall contain" a section entitled "statement of facts," which "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." An appellant is also required to provide record citations to the pages relied on in the Argument section. Ill. Sup. Ct. R. 341(h)(7).

¶ 45    Jaskula's "statement of facts," which is just over one-page, is grossly inadequate for the extent of proceedings that occurred in the trial court, and does not in any way provide this court with the "facts necessary to an understanding of the case." *Id.* Jaskula also includes an approximately seven-page section that she titles "procedural history," however that section largely recites various pleadings filed by the parties and the counts alleged, and orders entered by the court. In most instances, Jaskula merely sets forth whether the court "ruled in favor of" Jaskula or Dybka on certain counts or motions, but with little context or explanation for any of those rulings. Throughout Jaskula's briefs, she makes numerous factual assertions without record citations, while other record citations do not correspond with the factual statement that was made. In other

circumstances, Jaskula cites her own closing arguments at trial for factual assertions, without providing any citation to the underlying evidence. And on other occasions, Jaskula refers to other legal proceedings not at issue in this appeal, making factual allegations "on information and belief," without record citation.

¶ 46    In a particularly egregious example, Jaskula contends that the evidence showed that Dybka used 2700 as his "personal piggy bank," "writing checks to himself when he needed money, categorizing them as 'Shareholder Loan Repayment' and 'Shareholder Distributions.' " In support, Jaskula cites one page of Dybka's cross-examination at trial, in which the following exchange occurred:

> COUNSEL FOR JASKULA: Isn't it true, sir, that after calendar year 2012 you began taking large checks out of the bank account of [DRM] which ended up to be about 1.5 million?
>
> DYBKA: Absolutely no.
>
> COUNSEL FOR JASKULA: Isn't it true, sir, that the reduction in the assets of the company have to do with your shareholder loan repayments to yourself?
>
> DYBKA: Absolutely no.

¶ 47    Jaskula's repeated failures to provide adequate and accurate citations to the record on appeal are exacerbated by another violation of Supreme Court Rules. As the appellant, Jaskula is required to submit "a complete table of contents, with page references, of the record on appeal." Ill. Sup. Ct. R. 342. The table of contents shall include:

> "(1) the nature of each document, order, or exhibit *** ;
>
> (2) in the case of pleadings, motions, notices of appeal, orders, and judgments, the date of filing or entry; and

15

(3) the names of all witnesses and the pages on which their direct examination, cross examination, and redirect examination begin." *Id.*

¶ 48     Jaskula's appendix contains only a copy of the table of contents that is prepared as part of the compilation of the common law record. That table of contents is not sufficient to comply with the requirements of Rule 342. See *Blanquart v. Kalayil*, 2025 IL App (2d) 240217-U, ¶ 66. In particular, it does not specify the "nature of each document, order, or exhibit"—for example, all orders entered by the trial court are simply titled "ORDER"—and it does not include any references to the report of proceedings, including the names of witnesses or the pages on which their examinations begin. An adequate table of contents is particularly important in a case like this in light of the 12-year long proceedings, and the 18,000-page record. *Id.* (finding that plaintiff's brief violated Rule 342 where he only included "a copy of the table of contents from the trial court's records, which in no way provides this court with a means to navigate the more than 3,000-page record in a complex medical malpractice case.").

¶ 49     Jaskula's failure to provide accurate record citations is also problematic because it makes it difficult for this court to determine whether her appellate challenges were raised in the trial court and preserved for review. In particular, Dybka contends that Jaskula's appellate claim that the court should have ordered DRM to indemnify her is forfeited because she did not seek indemnification in the trial court. Jaskula contends that the trial judge "failed to grant" her indemnification," refusing to "provide any meaningful reasoning," and "indicat[ing] that [the trial court] would not hear evidence on this issue." The record citation Jaskula provides for this statement, however, does not relate in any way to a claim for indemnification or the court's refusal to hear evidence on that issue, and we find no basis to conclude that this claim was raised below.

¶ 50     Dybka also contends that Jaskula cannot challenge the valuation date of December 31,

16

2011, in this appeal because she agreed to that date in the trial court, pointing out that Jaskula's expert witness valued DRM as of that date. See *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 36 ("Under the invited-error doctrine, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error.") (internal quotation marks and citation omitted.).

¶ 51    In reply, Jaskula argues that she did not waive this argument because she "requested a valuation as of the date of trial, and the court erred in ordering a valuation as of December 31, 2011." Jaskula points to one paragraph of her response to Dybka's post-trial motion for judgment, in which she responded to Dybka's argument that the trial court should accept his expert's testimony as to DRM's value on December 31, 2011, stating that neither parties' experts "factor[ed] in the 'goodwill' of DRM" and that her shares "had value in [*sic*] December 31, 2011 and still have value today." This single paragraph in a response to a post-trial motion does not convince us that Jaskula sufficiently raised a challenge to the valuation date used by the trial court, to preserve it for review.

¶ 52    We also conclude that several issues raised by Jaskula are forfeited for failure to articulate a legal argument or cite authority in support, which is an additional violation of Rule 347(h)(7). See *Bank of America, N.A. v. Kulesza*, 2014 IL App (1st) 132075, ¶ 18 ("It is well settled that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal."); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 ("A court of review is entitled to have the issues clearly defined and to be cited *pertinent* authority.") (Emphasis in original.).

17

¶ 53    Jaskula fails to cite any legal authority for many of her arguments, arguing simply that the trial court's orders were "unfair," "inequitable and poorly reasoned." For example, in the first 21 pages of Jaskula's argument section, she cites one Illinois statute (section 12.56 of the Corporation Act, which the court found that Dybka had violated), one section of the Internal Revenue Code (which Jaskula contends shows that Dybka wrongly changed accounting methods to "alter the financials" of DRM and 2700), and two cases. And when Jaskula does cite those two cases, she fails to provide any explanation as to their significance.

¶ 54    In Jaskula's brief, she makes extreme statements about various actions of the court being unfair, but rarely supports those statements with any legal analysis or authority. She contends that the court "utterly failed in its duty to protect her" from Dybka's wrongful actions, and that the court "ratified wrongful and fraudulent transactions." In arguing that the court set the wrong valuation date, Jaskula contends that, "Because [Jaskula] was the victim of wrongful exclusion from the business, it should be [Jaskula's] right to decide when the business should be valued." Jaskula however provides no legal support for her contention that it was her "right to decide" the valuation date.

¶ 55    Additionally, in Jaskula's argument that the court erred in failing to order attorney fees, Jaskula does not address the trial court's finding that the plain language of section 12.60 of the Corporation Act requires that the fees sought be "incurred in [a] proceeding" under only certain statutory sections, nor does she cite any legal authority for her contention that the trial court abused its discretion. Jaskula merely argues that the trial court "erred in failing to do its job" by not granting her fee petition. She asks this court to reverse the trial court's judgment—without a remand because Dybka "lacks a meritorious defense"—and to "enter judgment in favor of Jaskula and against Dybka in the amount of $1,100,940.56."

¶ 56 Even if we did not find Jaskula's argument on this issue forfeited for failure to cite any legal authority, we would find no basis to conclude that the trial court abused its discretion on this issue. The record shows that the court had repeated concerns with Jaskula's petitions, finding that she consistently included non-compensable fees in her requests, and that the attorney fee log entries were not sufficiently detailed to determine if the fees were compensable or reasonable. After giving Jaskula multiple opportunities to show that her attorney fees were compensable, including at an evidentiary hearing, the trial court found that Jaskula had not met her burden. Based on our review of the record, we find no abuse of discretion. See *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 286 Ill. App. 3d 1028, 1031 (1997) (where a plaintiff failed to differentiate attorney fees incurred in relation to a claim for which fees were compensable, from other nonreimbursable claims, "the trial court did not abuse its discretion in rejecting the fee petition *in toto.*").

¶ 57 This court has repeatedly explained that the appellate court " 'is not a depository in which an appellant may dump its arguments without factual foundation in hopes that [the court] will sift through the entire record to find support for a determination favorable to appellant's position.' " (Brackets in original.) *Mikrut v. First Bank of Oak Park*, 359 Ill. App. 3d 37, 51 (2005) (quoting *Coffey v. Hancock*, 122 Ill. App. 3d 442, 444 (1984)); *Engle v. Foley & Lardner, LLP*, 393 Ill. App. 3d 838, 854 (2009). "It is not the responsibility of this court to scour the record in search of facts that support the arguments being advanced by a party." *Travaglini v. Ingalls Health System*, 396 Ill. App. 3d 387, 405 (2009). "Strict adherence to the requirement of citing the relevant pages of the record is necessary to expedite and facilitate the administration of justice." *Lake Point Tower Garage Ass'n v. Property Tax Appeal Board*, 346 Ill. App. 3d 389, 397 (2004). The need for the parties to assist in expediting and facilitating our review of an appeal is especially important where,

as here, Jaskula is asking the court to review 10 different legal issues involving many thousands of pages of record in litigation that has been pending for over a decade. Jaskula's repeated failure to cite pages of the record and legal authority, has made our review of many of the issues she raises difficult, if not impossible.

¶ 58 Moreover, in addition to the pleading deficiencies, Jaskula has also failed to provide a complete record. Jaskula, as the appellant, bears the burden of filing a sufficiently complete record of the trial court proceedings to support her claims of error. *Keefe v. Allied Home Mortgage Corp.*, 2016 IL App (5th) 150360, ¶ 27; *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts that arise from the record's incompleteness are to be resolved against the appellant and we presume that the trial court ruled in conformity with the law and sufficient factual basis. *Id*.

¶ 59 Jaskula challenges the trial court's decisions to deny her motion to appoint a receiver, however she fails to provide this court with the transcripts in which the trial court ruled on that motion. Instead, this court only has the written order of the court, denying the motion for "reasons stated on the record." The appointment of a receiver is a matter committed to the discretion of the trial court, and it will not be reversed on appeal absent an abuse of discretion. See *In re Marriage of Padilla & Kowalski*, 2022 IL App (1st) 200815, ¶ 27 ("We review a trial court's decision to appoint a receiver under the abuse of discretion standard"). Without the benefit of the transcripts providing the reasoning for the trial court's ruling, this court is unable to determine whether the trial court abused its discretion in denying Jaskula's request for the appointment of a receiver. In these circumstances, we have no basis to conclude that the trial abused its discretion, and we presume that the trial court's decision was in conformity with the law and had sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92; see also *Gakuba v. Kurtz,* 2015 IL App (2d) 140252, ¶ 22

(presumption that the court acted properly in the absence of a complete record applies "especially" when the standard of review is abuse of discretion).

¶ 60    Ultimately, we find no compelling reason in this case to excuse or overlook the numerous violations of Rules 341 and 342, and the deficiencies in the record presented by Jaskula. Jaskula has impeded our ability to review all of her issues on appeal by failing to consistently and accurately cite pages of the record she relies on in conjunction with her argument, by failing to articulate legal argument or cite pertinent legal authority, and by failing to present this court with a complete record for this court to review. Jaskula's failures are so egregious and pervasive that this court finds that she has forfeited review of the issues raised in this appeal.

¶ 61    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 62    Affirmed.